1  Alisa Spitzberg, Henya Spitzberg, Lauren Spitzberg
   7513 Fountain Ave. #203
2  Los Angeles, CA
   323-883-0154
3  Email: AlisaSpitz@aol.com

4

5  In Propria Persona

6

LODGED
CLERK, U.S. DISTRICT COURT
NOV 2 9 2010
CENTRAL DISTRICT OF CALIFORNIA   DEPUTY
BY

FILED
CLERK, U.S. DISTRICT COURT
DEC - 7 2010
CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISCRICT OF CALIFORNIA

**CV10-09169-JHN(PLA)**

10  Alisa Spitzberg, Henya Spitzberg, and Lauren       Case No.
    Spitzberg,
11                                                     **CIVIL RIGHTS COMPLAINT
           Plaintiffs                                  PURSUANT TO
12                                                     42 U.S.C. § 1983**
    vs.
13
                                                       **DEMAND FOR A JURY TRIAL**
14  ,
        Mathilde Notaro, Stephanie Willen, Michael
15  Griffee, Mark Flanagan, Reeta Piazza, Allison
    Sievers, Lavely and Singer LLP, The Threat
16  Management Unit of the LAPD, John Gregozek,
    James Hoffman, Martha Defoe, ,Detective Lopez,
17  Detective Smith,  Jeffrey Dunn, Sergeant Angela
    Lucie, Deputy city attorney Phyliss Henderson,
18  ,Deputy City attorney Kelly Boyer, Deputy City
    attorney Jennifer Waxler, Deputy City attorney
19  Felise Kalpakian, Deputy city attorney Bernie
    Brown, Deputy city attorney Martin Boags, Deputy
20  city attorney Katie Ford,  District attorneys office,
    Depute District attorney Richard Vagnozzi, Deputy
21  District attorney Jessica Goulden,  Dr. Francisco
    Velarde, Dr. Kaushal Sharma,, and DOES 1-100.
22
           Defendants
23

24

25  <u>**VENUE**</u>

26     1.  The Central District of California is an appropriate venue under 28 U.S.C. section 1391

27         (b)(2) because it is where the events giving rise to this claim occurred and all the acts/or

28

---

Case No.

omissions complained of herein have occurred in the District.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. ' 1983 and the First,Fourth, Fifth, Fourteenth Amendments and Eighteenth Amendments  to the United States Constitution and the laws of the State of California. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. ' 1331, 1343 (3-4). Supplemental jurisdiction is asserted over state law claims pursuant to 28 U.S.C ' 1367.

3.   Jurisdiction to grant declaratory judgment is conferred by 28 U.S.C. " 2201, 2202. An award of costs and attorneys fees is authorized pursuant to 42 U.S.C. ' 1988

## INTRODUCTION

4.   Much of the facts and claims, of this suit, arise from the abuses of processes, and deprivations of rights that occurred when the law firm of Lavely and Singer used their affiliations with the LAPD's Threat Management Unit to assist them, under the color of law, with a civil dispute involving a client of the Lavely and Singer law firm.

5.   When Alisa Spitzberg failed to react, as was expected, she and her family soon became a victim of a various frauds and extreme abuses that deprived them of rights, under the color of law.

6.   Throughout, this twenty three month malicious prosecution, overwhelming evidence existed that the police and prosecution knew that Mathilde Notaro and her "witnesses" were liars. They chose to ignore this to blindly persist in a malicious prosecution, long after it was abundantly clear to them, that the charges had to be dismissed.

7.    It began with fraudulent civil restraining orders as retaliation for first amendment right issues and when Alisa Spitzberg sued Notaro for defamation, the first criminal charge was filed without probable cause.

8.    In the course of this malicious prosecution, seven search warrants were issued and executed without probable cause and based on fraud. When none of the harassments and intimidations succeeded in inducing a plea bargain there began the addition of blatantly groundless charges. When that too didn't induce a plea bargain and the case was heading to trial, a competency ploy was initiated at a widely witnessed ex parte in Division 40. When these tactics failed too there began the another phase of a lawless ,vindictive, and brutal prosecution, with a SWAT team coming to arrest Alisa Spitzberg on November 4th

2009 and invading the home of Henya Spitzberg. Thirty days of coercive confinement with no bail and no charges and the continuation of the fraudulent competency ploy followed.

9. After each tactic was tried a plea offer was made by this prosecution. The first plea was "informal diversion," and after each new tactic it became "Diversion" with various conditions etc.

10. When this too failed to frighten Alisa Spitzberg sufficiently to induce the plea bargain ,that would absolve the threat management, city attorney and now District attorney from the liability that could be deduced from malicious prosecution, there was a flagrant attempt to railroad Alisa Spitzberg into a conviction at a twelve day trial.

11. A wrongful conviction would have seriously hampered or thwarted the 1983 suit recommended by the a public defender witnessing the constant dirty tactics and deprivations, under of color of law, that marked this malicious prosecution. That too failed when a just and alert judge refused to let this happen on his watch.

12. On March 23rd 2010, Judge H. Randolph Moore released Spitzberg from this 23 long month prosecution by dismissing all the charges with prejudice against the prosecution.

13. On March 23rd 2010, 23 months after defendant Detective Gregozek of the Threat Management Unit, first involved himself in this fraud, the judge acquitted the defendant at trial. The dispositions of 2 counts : acquittal on defense counsel's motion to acquit before the case went to the jury, and one count aquitted on a motion to dismiss "in the interests of justice" after the jury hung.

14. Four counts were added on January 21st 2010 and dismissed in the furtherance of justice before the trial began and those charges, alone, show the nature of such a prosecution.

15. The dispositions are all favorable dispositions but had the defendant, in that case, been prosecuted fairly or had she an advocate for counsel; the dispositions would have been a dismissal as early as October of 2008. A non malicious prosecution would not have taken this to trial.

**PARTIES**

A. **Plaintiffs**

16.   Plaintiff Alisa Spitzberg was, at all times relative herein, a United States citizen who resides in Los Angeles, California.

17. Plaintiff Henya Spitzberg was, at all times relative herein, a United States citizen who resides in Los Angeles, California.

18. Lauren Spitzberg was, at all times relative herein, a United States citizen who resides in Los Angeles, California.

**B.  "Civilian" Defendants- Proximate cause of deprivations under color of law.**

19. Defendant Mathilde Notaro was at all times herein, a United States Citizen who resides in Los Angeles, California.

20. Defendant Stephanie Willen was, at all times herein, a United States Citizen who resides in Los Angeles, California..

21. Defendant Allison Sievers was, at all times herein, a United States Citizen who resides in Los Angeles, California.

22.  Defendant  Lavely and Singer LLP was, at all times herein, a United States business who conducts their business in Los Angeles, California.   .

23. Defendant Michael Griffee was, at all times herein, a United States Citizen who resides in Los Angeles, California.

24. Defendant Mark Flanagan was, at all times herein, a United States Citizen who resides in Los Angeles, California.

25. Defendant Reeta Piazza was, at all times herein, a United States Citizen who resides in Los Angeles, California..

15.   **C.      LAPD'S Threat Management Unit and SMART Unit   Defendants- All present on November 4th     2009**

26. Defendant John Gregozek is a United States Citizen who resides in  Los Angeles, California. This Defendant is sued both individually and in his official capacity as a Detective for the LAPD's Threat Management Unit.

27. Defendant James Hoffman is a United States Citizen who resides in Los Angeles, California. This Defendant is sued both individually and in his official capacity as a Detective for other LAPD's Threat Management Unit.

28. Defendant Martha Defoe is a United States Citizen who resides in Los Angeles, California.

29. Defendant Susan Lopez is a United States Citizen who resides in Los Angeles, California.

30. Defendant Smith is a United States Citizen who resides in Los Angeles, California. This Defendant is sued both individually and in her official capacity, and was at all times material to the allegations in this Complaint acting in her capacity as a Detective for the LAPD's Threat Management Unit.

31. Defendant Threat Management Unit is sued in their official capacity, and was at all times material to the allegations in this Complaint acting in his capacity as Police Officers employed by the City of Los Angeles, California and were acting under color of law.

32. Defendant Jeffrey Dunn is a United States Citizen who resides in Los Angeles and is sued both individually and in his official capacity as the Supervisor of the Threat Management Unit.

33. Defendant Angela Lucie is a United States Citizen who resides in Los Angeles and is sued both individually and in his official capacity as a sergeant with the SMART unit.

34. Defendant Detectives DOE 1-10 are United States Citizens who reside in Los Angeles, California. These Defendant's names are unknown but could be identified by pictures etc.  They  are sued both individually and in their  official capacity as Detectives of the LAPD's Threat Unit that conducted the search, arrest, and seizures on November 4th 2009. ,

**D. The City Attorney Defendants**

35. Defendant Phyliss Henderson is a United States Citizen who resides in Los Angeles, California. This Defendant is sued both individually and in her official capacity as a city attorney.

36. Defendant Kelly Boyer is a United States Citizen who resides in Los Angeles, California. This Defendant is sued both individually and in his official capacity as a city attorney.

37. Defendant Jennifer Waxler is a United States Citizen who resides in Los Angeles, California. This Defendant is sued both individually and in his official capacity as a city attrorney.

38. Defendant  Felise Kalpakian is a United States Citizen who resides in Los Angeles, California. This Defendant is sued both individually and in her official capacity as a city attorney.

39. Defendant Martin Boags is a United States Citizen who resides in  Los Angeles, California. This Defendant is sued both individually and in his official capacity as a city attorney.

40. Defendant Katie Ford is a United States Citizen who resides in Los Angeles, California. This Defendant is sued both individually and in her official capacity as a city attorney.

41. Defendant Bernie Brown is a United States Citizen who resides in Los Angeles, California. This Defendant is sued both individually and in his official capacity

42. Defendant Does 1-10 unidentified city attorneys who are listed on the minutes and who witnessed the bad faith acts on certain dates throughout. These Defendant are sued both individually and in their official capacity as city attorneys.

**E. THE DISTRICT ATTORNEY DEFENDANTS**

43. Defendant District Attorney  is a Unites States governmental agency in Los Angeles,California.

44. Defendant Richard Vagnozzi is a Unites States Citizen who resides in in Los Angeles, California. This Defendant is sued both individually and in his official capacity

45. Defendant Jennifer Goulden is a Unites States Citizen who resides in in Los Angeles, California. This Defendant is sued both individually and in her official capacity .

46. Defendants District attorney DOES 1-10 practice law in the Division 95 Courthouse of the Superior court of Los Angeles and are listed on the minutes but their involvement isn't yet known. These Defendants are sued both individually and in their official capacity

## F. THE DOCTOR DEFENDANTS

47.  Defendant Francisco Velarde is a United States Citizen who resides in Los Angeles, California. This Defendant is sued both individually and in his official capacity/

48. Defendant Dr. Kaushal Sharma is a United States Citizen who resides in Los Angeles, California. This Defendant is sued both individually and in his official capacity as a doctor in this case.

49. DOES 1-100 might or might not live in Los Angeles or be American Citizens and might or might not be sued in their individual or their official capacity.

## STATEMENT OF FACTS

50. The plaintiffs moved to Los Angeles in order for Alisa and Lauren Spitzberg to pursue a career in comedy and comedic writing.

51. Spitzberg met Stephanie Willen in early 2007. Spitzberg did not know Notaro but was informed that Willen and Notaro had a relationship years ago.

52. Spitzberg would learn that Willen, in order to win back the affections, job offers, trips, and friends lost when Notaro broke all communication with her had used Spitzberg in various ways ,to incite jealousy in Notaro, and to "win her back."

53. On August 29th 2007, Alisa Spitzberg met defendant, Mathilde Notaro, for the first time, at a crowded coffee house during a well attended open mic poetry night. Nothing unusual occurred. Notaro and Willen will allege verbal tirades and violence on this night. Witnesses will soon thereafter attest that nothing unusual happened and that those women lied.

54. Many documents will show that Notaro and her witnesses were lying in the affidavit and the hearing to obtain a permanent restraining order and then in attempt to maliciously prosecute Alisa Spitzberg. Such evidence was available to the police as early as May 28th 2008 and evidence will show that Gregozek and Hoffman et al. were informed of such lies and did nothing.

55. On April 7th 2008, Spitzberg went to see a comedy show at one of the few premier venues for "alternative comedy" called "Largo." Spitzerg had come to Los Angeles to pursue a career in "alternative" comedy after much indication that the full fledged pursuit of such a career was long overdue. Notaro would allege that Spitzberg had

pushed her on August 29th 2009 and have Spitzberg removed from that club and publicly humiliated, for no understandable reason.

56. On April 7th 2008, Spitzberg sat quietly and watched a show and never did anything . Notaro will tell Defendant Gregozek that on this night Spitzberg "threatened her" but not provide detail and at the May 28th 2008 restraining order hearing Notaro will change her story to now include a loud verbal tirade. In both versions she will say that Heidi Feigin, her new talent agent from The William Morris agency stood right there. In all five versions given to various entities, Notaro will say that her alleged altercation with Alisa Spitzberg will be witnessed by Heidi Feigin,

57. Some time in January of 2009 , an investigator would talk to Heidi  Feigin and Ms. Feigin would confirm that Alisa Spitzberg did not do any of things alleged, and in fact did nothing at all regarding Notaro.  Notaro was lying and the police and prosecution were given this evidence and they ignored it.

58. An FBI agent who viewed this evidence sometime in 2009 said about Notaro, "She's obviously a total  liar. You need to void this order." Defendant Gregozek will later say he's "investigating" and he is the "investigator" but he will  not interview any witness associated with any of the dates or alleged incidences that underlies the restraining order and the criminal prosecution based on such an order.

59. . Heidi Feigin will state to an investigator in early  2009 that Notaro has been lying and defaming  Spitzberg since even before April 7th 2008 and , and then Ms. Feigin will tell the public defender, representing Spitzberg at trial , that nothing Notaro said was true and that she was receiving phone calls from Notaro's newest manager, Hunter Siedman, and Ms. Feigin  was getting angry because he was saying, " Why are you testifying for the other side?" as a means of intimidation.   Heidi Feigin.was on call for the defense at trial.

60.   On April 8[th 2008,] Alisa Spitzberg will write an e-mail to Notaro in an attempt to resolve this matter and to find out what was compelling Notaro's animus. She would not receive a reply. Later, this  page long  e-mail would be edited to everything but the last line. Alisa Spitzberg would give Gregozek this e-mail on May 7th 2008  and she would include it in her answer to the restraining order and it would simply be ignored by Gregozek and Judge Gerald Rosenberg.

61. On April 12th 2008, Alisa and Lauren went to Largo to talk to the management about why Alisa Spitzberg was removed 5 days previous. Michael Griffee will speak to the investigator and a prosecutor and  confirm that plaintiffs came to speak to him and not Notaro. Notaro will lie about everything involved with that evening.

62.  On all reports, narratives, and search warrants that would be produced by this Threat Management in this case , it will state ,that the police were called on that night , and arrived at the scene but that the Spitzbergs had left when the police arrived.

63.  In an Appllelate brief written by Notaro's lawyer, Allison  Hart Sievers, Seiver  will say that not only were the police called and not only did they arrive but these police saw the Spitzberg sisters and the Spitzberg sisters saw them. No mention will be made of any incident or police reports.

64.  Documentary evidence would  finally would became available to Spitzberg that no police were called much less arrived at the "scene," that night.  This newly obtained evidence will show that Defendants Griffee, Flanagan, Piazza, Notaro, Gregozek, Ford etc are all lying when they state otherwise as late as March 4th 2010.

65. They knew that incident reports and a 911  would have to exist and it would not be requested or it was requested and the exculpatory evidence that they were all lying was buried. Evidence exists that Jennifer Waxler, on the record, had requested such records as early as March of 2009 and had hidden what she found.

66. These documents, dated Septemeber 14th 2009, will conclusiviely  also show that city attorneys Brown, Boags, and Ford were performing their own investigations and that they  can not have an excuse as to why, after learning this, they would continue to pursue this prosecution. In other words, these documents show that they had become the investigators and they had pursued a prosecution even after learning concretely that Notaro and Gregozek etc were lying to them.

67. Also on April 12th an unbiased witness will write an affidavit and will be on call for the defense at trial. His name is Julius Quinn Roberts and he is a bouncer at the adjoing club. He is a parole officer by day and he will read what Notaro and her witnesses have written or stated and he will testify that "they are all liars" and "nothing they are saying is true."

68. Sometimes after April 7th 2009, Alisa Spitzberg would write a post on a message board called "Data lounge" where she discussed being removed by Notaro. The messages were

deleted by the webmaster of the site due to Allison Siever's writing according to Notaro "several  cease and desist letters,"  and such messages were never handed over to the defense . Such messages will be mentioned in police reports and the 7 search warrants but they must be very exculpatory as the prosecution till today has refused to turn them over.

69. On information and belief, Defendant Notaro aspires to be a celebrity and she did not want the truth about her recent activities to get out and that is why she would hire an entertainment and copyright lawyer such as Allison Sievers sometime in April of 2008.

70. On April 29th 2008, Alisa Spitzberg went to perform at an open Mic comedy night at the Impov, as she had been doing since this open mic night started.

71. Before going on stage, Alisa Spitzberg will discover that she is being denied entrance because  Notaro has  sent faxes of Alisa and Lauren Spitzberg to many comedy clubs, including the Improv .

72. The plaintiffs would attempt to resolve and though no reason existed to call the police based on what really occurred that night, Reeta Piazza will call the police and lie to them repeatedly, in order to punish the plaintiffs ,under the color of law. It will be proven that no such call would be made by anyone not acting with evil intent, and that Piazza is a liar who is using law enforcement to hurt and to intimidate those who did nothing wrong.

73. Two police Officers, Badar and Montalvo will arrive at the Improv on the night on April 29th 2009.  They will interview the plaintiffs,and witnesses . Officers Montalvo will interview Mathilde Notaro for an extended period of time . Officer Montalvo and Officer Badar will conclude that there was no crime on that evening and will not fill out a police report despite, we can assume, Notaro's hysteric protestations. This will be the first and last time any law enforcement speaks to Notaro in person according to John Gregzoek and the Threat Management Unit's many reports and "sneak and peek delayed notification" search warrants.

74. 23 months later Officer Montalvo will be on call for the defense. Badar will not be found for suspicious reasons and Reeta Piazza will deny calling the police to the investigator for the public defender. Reeta Piazza will also  make statements that contradict all statements made by Notaro and Brian Whitaker and herself- as to the events of that evening.

75. On April 30th 2008, according to defendant Gregozek, Notaro will directly and without the normal protocols contact him, "via phone,"

76. Notaro 's signature is on the stalking report allegedly written up that day by Gregozek which defies explanation as all accounts say that they never interviewed Notaro in person.

77. In the subsequent reports and search warrants, Gregozek will say that he "completes investigation over phone,"on April 3oth 2008.

78.  The narrative allegedly written up that day by Gregozek is strictly base allegation presented as fact . Such a narrative would have to change, considering the documents, witnesses ,and the voluminous alternate statements that will emerge that contradicts Gregozek's, "completed investigation." Nevertheless, it will not change over the ensuing 23 months in any rational way.

79. Gregozek will begin to omit the date of August 29th 2007 and he will move text around and add false information for other dates, but he will never attempt to present the truth about the events of April of 2008 in any report of search warrant. In fact, any inspection of his "completed investigaton" and the many alternate statements, reports, and witnesses will show that Gregozek and this Threat Management Unit are behaving in bad faith and with evil intent throughout.

80. Gregozek will never re-interview Notaro over the course of 23 month prosecution . He will state that on May 6yh 2008 he would speak to "witness Stephanie Willen," via phone.

81. Aside of the two phone conversations Gregozek will have with Notaro and Willen, he never interview any of the many witnesses in this case until he will claim to interview a Martha Kelly on August 8th 2008. Gregozek will not ask for the 911 calls, incident reports, or police reports that must exist for the dates of April 12th and 29th of 2008, considering his "investigation."

82. Later, narratives will exclude August 2007, entirely, and different TMU detectives will be mentioned as present on the same reports. Altered reports will also be submitted and it wil be clear to any trier of fact that the plaintiffs are at the mercy of a fraud.

83.  Gregozek and Hoffman will later say, orally and through documents, that on April 30th 2008, they didn't believe Notaro , but had no choice but to write up such reports because Notaro "wanted them to." Documents will show this shift in blame on July 28th 2009.

84. On May 1st 2008, Gregozek will send away for Alisa Spitzberg's criminal records and discover that she is "clean," This fact will never be included in any further narratives and will only be handed over once the trial is over in March 23rd 2010.

85. Also on May 1st 2008, Notaro will obtain an ex parte order from the Santa Monica Court and  a case number. The ex parte order doesn't appear to have been filed  and no information, as required, is filled in by Notaro or her counsel. No evidence exists in the court minutes of the fact that Notaro obtained her case number  and an ex parte that day.

86. On  May 2nd 2008, according to Gregozek's subsequent police report,dated August 12th 2008, "Detective Hoffman, Defoe, and Gregozek responded to Notaro's residence, where , " Notaro identified Spitzberg by photograph." In other words: an Elite Threat Management, directly contacted, by Mathilde Notaro, a civilian, did not try to contact the many witnesses and police officers mentioned in the April 30th 2008 report taken via phone by Gregozek. Nor are any of the many witnesses mentioned by Notaro and Spitzberg ever spoken to or sought out.  Instead, three members of this Elite unit drove cross town to Venice from Downtown Los Angeles to identify Spitzberg by " one photograph,".  No interview with Notaro on that day or the three roommates Tom Sharpe, Kjell Bjorgen, and Chris Fairbanks has ever been handed over.

87. Mathilde Notaro must have been present to identify the photograph on May 1st, and perhaps the three roommates that she lists on the temporary and permanent restraining too, and yet , there is no indication that an interview with the four took place.

88. Accordingly, the police report that is submitted to the City attorney for filing consideration, three detectives from an elite highly specialized Detective unit just drove from Downtown to Venice and talked to no one after  they "responded to a residence."

89. On May 4th 2008, Notaro fills out a civil cover sheet for the Temporary restraining order.

90. On May 5th 2008, it appears from the docket that this is the singular time that Notaro and or her attorneys, Lavely and Singer and Allison Hart Sievers, filled out the paperwork to obtain an ex parte emergency temporary restraining order . The Docket will state that Allison Sievers and the Law Firm are filing these papers when in fact Notaro is filling out the forms and filing it herself.

91. On May 5th 2008 Notaro will pretend to write as her  Allison Sievers. She will write the law firm but she will not write the bar number or a phone number and she will speak in first person. Again, as on May 1st, the reasons for the ex parte are not stated. There is no

mention of Gregozek or the TMU and lawyers fees are requested. Notaro does not include any reports or evidence and writes, "LAPD" not Threat Management Unit

92. In other orders handled by Gregozek, this unit and this law firm, evidence will show that Gregozek behaved very differently.  The recent documents involving a restraining order with John Gregozek, Lavely and Singer, and Jennifer Aniston will conclusively show that Gregozek and this Threat Management Unit were not acting in good faith  when they would later lie about this being an  " official investigations," or any investigaton.

93. On May 6th 2008, Gregozek says on a report that he drove to Lavely and Singer's offices in Century City where he "obtained printed out e-mails and online forums written by Spitzberg about Notaro," from Notaro's attorney, Allison Sievers.  In other words, Gregozek, alone, drove to the law offices of Lavely and Singer in Century City to pick up "emails and forums" that he now, without any evidence, is alleging were written by Spitzberg.

94. Though there were repeated discovery requests, by the defense, for such e-mails and forums, in the course of the malicious prosecution, they were never turned over. In fact, not one e-mail or forum page or any evidence that Spitzberg wrote anything about anyone was ever shown by Notaro, Gregozek, and then the city attorneys in ensuing 22 months.

95. On this same day, May 6th 2008, according to the report allegedly written by Gregozek on August 12th 2008, Gregozek interviewed Willen "via telephone" and Gregozek will then write as fact what she allegedly told him by phone on May 6th 2008.

96. Everything Willen claims can be supported or contradicted by e-mails and the many witnesses that were there on the night of August 29th 2007, and yet nothing relating to this night but the uncredible allegations of Stephanie Willen will ever be presented by Gregozek.

97. In subsequent reports and search warrants Gregozek and Hoffman will begin to remove reference to the one alleged incident involving Willen and violence in August of

98. The defense from as early as December 16th 2008 did produce the evidence and the witnesses to show that everything said by Willen was a lie and yet John Gregozek and then the assorted city attorney judges absolutely ignored this vital exculpatory evidence throughout the malicious prosecution. No notes on such a phone interview are alleged to exist.

99. No one from the Threat Management will interview Willen in person and no prosecutor will interview her till March of 2010 when the case proceeds to trial. In those statemements it will be shown again that Willen is a malicious liar who no reasonable person would believe.

100.   It is alleged that no one in law enforcement did believe Willen or Notaro and the prosecution was only a product, at first, of an unholy alliance between Lavely and Singer and This threat management Unit and then it became personalized when an internal affairs complaint was lodged against Gregozek and the city attorneys believed they were being mocked on Alisa Spitzberg's blog.

101.   On May 7th, 2008, defendants Gregozek and Hoffman will identify themselves as LAPD there in response to a "crime report" and they will make a 2 hour interview of all plaintiffs . None of the plaintiffs are informed that they are being taped.

102.   The tape and the obtained transcript of May 7th will show that Gregozek and Hoffman are outright lying in the subsequent reports associated with this date and interview.

103.   The tape and transcript of May 7th 2008 will show that they are telling Spitzberg to stay away from the internet, and that they omit 119 minutes worth of discussion. Gregozok and Hoffman will include statements and characterizations that did not occur in a report allegedly made on August 12th 2008.

104.   At the end of this two hour interview with the three women , John Gregozek will hand over the temporary restraining order without a proof of service attached. He and his partner, James Hoffman will hear and say things of consequence, on this date, and subsequently by phone when Lauren and Alisa Spitzberg call them and urge them to investigate. Gregozek will admit that Alisa Spitzberg called him but will omit what really was said in those phone conversation with him and his partner.

105.   After May 7th 2008, according to all documentary indications, Gregozek or Defoe or Hoffman (The reports as to who was involved are murky) don't appear to conduct any further "investigation."

106.   It is soon discovered by the plaintiffs who these detective really work for and that the law firm of Lavely and Singer represented the LAPD's threat management unit in a defamation suit that was brought against a major publisher and that the LAPD's threat

1   management unit does not handle cases like the case of Notaro vs. Spitzberg and then the
2   People vs Spitzberg, and that their involvement is suspect, to say the least.

3   107.    It is discovered that defendant Detective Johh Gregozek is not following the
4   normal protocols and that his unit does not handle cases of this nature. Evidence will
5   show that nothing about his handling of this case is usual and that from the start it was
    done with bad faith and without probable cause.

6   108.    On May 27th 2008, Spitzberg's filed a response to the temporary restraining order,

7   109.    According to all submitted documents, the only other involvement to be seen from
8   this time, by this unit, till the criminal charges are brought in late August of 2008, is that
9   Gregozek will file the proof of service of the temporary order on May 27th 2008, with the
10  Santa Monica courthouse's clerk. Considering his later involvement and the facts of the
    case this is strange.

11  110.    Upon information and belief, these detectives and Martha Defoe concluded that
12  they could only return to this case in bad faith and the matter, to them, was dropped until
13  Lavely and Singer would urge them to return to it after August 15th 2008, to help them
14  win a civil suit.

15  111.    On May 28th 2008, The attorney , Allison Hart Sievrers, who allegedly filed all
16  the papers, is not present nor does she file a substitution of attorney nor does Gerald
    Roseberg inquire if she is late or in transit at this hearing.

17  112.    Though the docket says the attorney , Allison Sievers, filed the papers the judge
18  seems apprised of the situation beforehand when Mathilde Notaro attends the hearing
19  without counsel. No continuances are requested by Notaro and Rosenberg will say
20  things and do things that will deny due process and allow for a deprivations of rights,
21  under color of law.

22  113.    At this hearing, Notaro and her witnesses will contradict what is said in the
23  affidavit to an extreme degree and the transcript and forms will show that such
    contradictions were obvious and should have been caught by any capable trier of fact.

24  114.    . Later on, this testimony will contradict what is said in police reports , and
25  interviews with an investigator and city attorney, Martin Boags and Kathllen Ford. Such
26  undeniable evidence of perjury and fraud will not interest the law enforcement
27  defendants, time and time again.

28

115.     After the denial of due process and after flagrant perjured testimony that contradicts the affidavit and the police report that would be only learned about on September 25th 2008, Judge Gerald Rosenberg grants the permanent restraining order in favor of Mathilde Notaro.  It is based on stalking and it protects three men alleged to be roommates with Notaro. These men are named Thom Sharpe, Christopher Fairbanks, and Kjell Bjorgen. . Spitzberg's witness is removed by a bailiff without cause and as the transcripts show, Judge Rosenberg grants the order without due process

116.     No evidence exists or is presented that these men ever met Spitzberg and visa versa. Soon it will be discovered that these men did not live with Notaro at the time of such order or ever.

117.     Notaro is a pathological liar whose lies were easy to see . These lies were known to defendants at crucial times in the malicious prosecution that would result. Notaro wanted such  a " stalking" designation because such designation was the only way that Notaro could get the three hundred dollar fee waived.

118.     Spitzberg is never served with the CLETS permanent order despite Gregozeks statements that she was "served by court personell on May 29th 2008." There was no hearing on that date and no court personell or anyone ever served Spitzberg with the order, as evidenced by the court docket and transcripts of the May 28th hearing.

119.     Later on, James Hoffman will tell Alisa Spitzberg that he has nothing to do with this case and was just a "ride along,' when she calls him to beg him to talk to the witnesses and to take note of the contradictions between the affidavit of Notaro to obtain the temporary restraining order and what she said in the hearing in front of Judge Gerald Rosenberg.

120.     On June 23rd 2008,after being told by  John Gregozek and James Hoffman that "this is not a murder'  and "We're not going to go to coffee shops to talk to witnesses", as an excuse for not investigating, Spitzberg files an appeal of the restraining order.

121.     on August 13th 2008, After discovering even more evidence of defamation, Spitzberg files suit for defamation against Mathilde Notaro for defamation. Notaro is served with the complaint on August 15th 2008.

122.     The documents then show that there is no sure date as to when the criminal charge was filed against Spitzberg but it is believed that it was sometime after August 15th 2008 and that it could not have been anytime before August 25th though a documents signed

by defendant Kathleen Ford  will say that Alisa Spitzberg was being charged as early as August 18th[th]

123.      Sometime in August of 2008, Alisa Spitzberg received a summons in the mail that says that she is being criminally charged with one count of a violation of a restraining order. The arraignment on this charge is for October 1st 2008.

124.      In between August 2008 and October 16th 2008,Spitzberg , overwhelmed by what can only be a false criminal charge, hires a lawyer, Steven Lowe, to help her with the defamation claim. For 1.500 dollars ,he says he will "ghostwrite' her "motions to get a continuance"  but shortly afterwards he advises that she must drop this considering the criminal matter and how overwhelming that will be. He says he will return the unearned money but after his secretary appears to fill out a form to dismiss, "voluntarily" and gives them a proof of service form, he refuses to return the unearned fee. The handwriting on the proof of service strikes the plaintiffs as very familiar.

125.      Alisa Spitzberg speaks to an attorney named Richard Fine about assisting her with the appeal of the restraining order.  He tells her to go into court and look at the files to find out what is being alleged. She does so and only sees the same summons she was sent and a document dated August 15th 2008. Mr. Fine tells her to call the City Attorney and they have to tell her what the allegations are.

126.      Spitzberg calls the City Attorney's office, gives the number of the case and her name, and is given a man. The man says, "Oh. You. I'm looking forward to getting you." Spitzberg cannot believe what she hears and asks him if she has heard right. The man says, "Yes. You heard right." Spitzberg asked the man for his name, and he told her, "Ed Gaultier," and he slowly and mockingly spelled it out. Spitzberg called what ever number she could think of to complain and many seemed to know who Gualiter was and to not be surprised that he would say such things.

127.      On September 25th 2008, Alisa Spitzberg and her mother go to the arraignment where the judge is Dennis Landin and she is represented by Anan Desai, a deputy public defender. After conferring with Mr. Desai, she discovers that the  allegations according to the police report were that on July 14th 2008, Spitzberg told Martha Kelly(a friend of Notaro)" Tell Tig to drop the restraining order or I'm never going to let this go." In violation of the court order.

128.    Mr. Desai tells Spitzberg , " This case is a joke. I'd be happy to take this to trial." Mr. Desai  then informs her of the plea offer of the city attorney of ten days in jail and expresses to Spitzberg that he finds this really "harsh and strange" considering her record, the nonexistence of evidence, and the nature of the allegations,  but he tells her not to worry.

129.    Mr. Desai reads the redacted  reports, in his possession to  Alisa Spitzberg .  Alisa Spitzberg listens very intently to what Mr. Desai says, and is pleased to hear that what is being alleged in these papers contradicts what was said in the Affidavit and forms to obtain the temporary order and what was said at the hearing of May 28th 2008.

130.    Mr. Desai, at one point ,indicates that he was not given the temporary order or the permanent one have been included and she should bring a copy with her on the next meeting because he'd be curious to see them. It is later learned that the temporary order and permanent order documents were never considered when Phyliss Henderson  filed this charge and it is alleged that there is no probable cause to file such a complaint, considering that a perusal of these orders was necessary.

131.    It is discovered, many months later, that also on September 25th 2008, Judge Dennis Landin, signs a  criminal domestic violence protective order restraining Spitzberg from Notaro but oddly  not the three roommates listed on the other order . This order as can be seen from the documents and transcripts was made by depriving Alisa Spitzberg of her due process rights to hearing and notice.

132.    Again, the handwriting on this form, much later discovered in the file, looks very familiar to that of the individual who filled out the forms and is alleged to be Mathilde Notaro. Spitzberg is not aware of such a criminal order and signs a Own Recognize agreement . She is released and told to return on October 16th 2008.

133.    Alisa Spitzberg will tell her public defender and other lawyer about this illegally obtained order and they will say, "It's normal, judges don't follow the rules" time and time again.

134.    It will be proven that this illegally obtained criminal protective order, granted by Judge Landin, will be used in the most egregious ways throughout by the malicious prosecution.  Spitzberg and Notaro are not even acquaintances and it has never been in dispute that they never knew each other much less were domestic partners. Despite this

fact, notice and hearing would be required and it's absence will allow such an order to exist and be responsible for great injustices later on in this malicious prosecution.

135.    On October 16th 2008, Mr. Desai tells Spitzberg that he has not been allowed to take her case. Nicky Meehan, not assigned Spitzbeg, approaches Henya and Alisa Spitzberg, and tells them that she is not her lawyer and that her lawyer is "running late" but she can tell her that Spitzberg is being offered, " a very rare' plea offer- 24 hours of anger manangement, and  to "stay out of trouble for  year" and all charges will be dismissed without a formal plea.

136.    The public defenders involvement will play a major role in the malicious prosecution and final disposition of this case and it is therefore included in some detail. Spitzberg will soon enough find out that Mr. Desai  is  a rare public defender who will counsel an innocent client to take their  case to trial and that such lawyers are punished for trying to protect the rights of their clients, in that court house.

137.    Meehan became enraged when Spitzberg tells her that she is innocent, can prove it, and would never take any plea offers. Meehan tries to intimidate Spitzberg by telling her that everyone is innocent and there is no justice there and when Spitzberg still resists,Meehan walks off in a huff.

138.    As the minutes show, Anan Desai stands with Spitzberg, though Jose Ruvalcaba is the deputy Public Defender assigned that day, as she pleads not guilty. She is told to return on November 5th 2009. Jose Ruvalcaba, claiming to have gotten caught in traffic, introduces himself to Spitzberg and politely but not pushily tells hers that she has been offered a "great plea' and taking it might be advised with the way the system is.

139.    Spitzberg doesn't know about the "system" but she knows she can't plea to something she didn't do and that she knows is retaliation for a civil suit, and where she knows she has the witnesses and evidence that would not allow any prosecution to proceed in good faith.

140.    Spitzberg tells Mr. Ruvalca her version and that she has witnesses and that now Notaro and Willen have again made contradictory statements and that such statement contradict the statements of Griffee and Seccia etc,.  Mr. Ruvalcaba tells her that he will be transferred shortly ,but to send her what she has, and he gives her is e-mail address. A pretrial is set for November 6th 2008.

141.    Mr. Desai approaches Henya Spitzberg when she is saying how she will call the governor and how wrong this is and he says, "mama, do not call anyone. I just want to repeat to you what I told your daughter, " I would be happy to take this to trial."

142.    Spitzberg never hears back from Ruvalcaba despite repeatedly sending him evidence via e-mail. She eventually reaches a supervisor named Rodriguez who tells her that Mr. Ruvalca has been transferred and is no longer her attorney.

143.    On October 17th 2008, Spitzberg sends the first of two e-mails to James Hoffman, the other Detective present with Gregozek on May 7[th]2008, after she calls him and he agrees to look at her evidence despite again repeating that he was just a "ride along... that day." These exisiting e-mails will conclusively show that on October 17th 2008 the prosecution had to dismiss the charges and this Unit had to have conducted further investigation if they really believed the lies of Notaro et al.

144.    On October 30th 2008, for the first time since the charge was filed sometime in August of 2008, the supervisor of the city attorneys, in this case, a Bernie Brown, sends a request to the court to get just the permanent restraining order. Up till now he has not even seen the restraining order and he does not want to see the temporary order or affidavit that shows this is all a void order and hoax and that Gregozek and those listed as "investigating" knows this.

145.    On October 31st 2008, another letter is sent by Alisa Spitzberg to James Hoffman when a copy of the transcript of the restraining order hearing is obtained.

146.    On November 6th 2008, A. Franica Tawn, deputy public defender, is assigned the case, and she asks Spitzberg if she sees Notaro in the court. Spitzberg says, " no. Why?" Ms. Tawn says that Notaro has been subpoenaed by the City attorney for today. Notaro never shows up despite the subpoena.

147.    Later documents show that Allison Sievers of Lavely and Singer has intervened and Notaro has now made a statement related to the alleged violation on July 14th 2008, to a city attorney by the name Carlos Ramirez . Ramirez will excuse Notaro from being subpoenaed. Spitzberg will only learn this much later.

148.    Ms. Tawn ,the public defender tells her that it Sievers of Lavely and Singer has been contacting the city attorney an inordinate amount of times .Spitzberg will repeatedly inquire of Ms. Tawn what that means and Ms. Tawn either doesn't know or won't tell her.

149.     Soon afterwards , and after repeated requests, Franica Tawn agrees to try to get an investigator for Spitzberg and e-mails are exchanged informing Ms. Tawn of the addresses and phone numbers of the witnesses. Spitzberg hands in the witnesses she believes should be interviewed by the investigator for the public defender.

150.     On November 21st 2008. Spitzberg on the advice of Steven Lowe, an attorney she retained, and realizing that she won't have the resources due to this baseless prosecution, voluntarily dismisses the civil suit for defamation.

151.     On December 16th 2008, according to documents, Franica Tawn sends information to an investigator for the public defender named Neil Spector who then will make some efforts to talk to the witnesses on the list according to the documents.

152.     Spitzberg did not know the name of the police officers that were allegedly present on April 12th 2008 and Gregozek and Hoffman won't tell her their names when she inquires. She knows that two woman officers were there the night of April 29th 2008 so she goes to a few police stations and they send her to the Hollywood stations where again she is stonewalled as to the name of the sheriff, and now many officers who were at the "scenes" She is however told by a police officer , " Webster rejected the charge on August 22nd 2008"

153.     But, the police at the station refuses to tell her who these officers are and so this information about the police can only be known much later and proves to be the most compelling exculpatory evidence. Evidence that was available to Gregozek et all as early as April 30th 2008 if they had made one phone call.

154.     On December 22nd 2008, when a link to Lavely and Singer is made and it becomes clear that Gregozek and this Unit are dishonest and worse, Spitzberg contacts the Internal affaris Division to complain about Gregozek.

155.     Sometime in December,, Spitzberg before pursuing the complaint contacts the threat management unit to talk to the supervisor Someone with a woman's voice and by the name of Lopez answers and says to Spitzberg, "Now that you've made a complaint to internal affairs we're going to go into your computers." \Spitzberg ,of course, is disturbed by such statements but can't imagine that they could really go into her computers and if they did she can't see how that would help them.

156.     Also, sometime in December, Spitzberg contacts internal affairs and requests that she be allowed to show them her evidence and they decline by telling her that the will of

course need it at some point. Till this day, not one piece of evidence has been requested before they came to any decision.

157.    on January 13th 2009, According to documents only seen by the defense on March 12th 2009, Allison Sievers called John Gregozek to tell him that Notaro was now claiming that she has received four postings on her facebook page on January 7th 2009.

158.    The posting allegedly made to Notaro's facebook on January 7th 2009, are this January 7[th 2009] – " *Is  it true that you're going to be prosecuted for perjury and you're your career will really suffer. I heard that you will do anything to get rid of competition and you have done some really ugly things? What's your side of the story "- She'll do well in jail that's for sure." " "Falsely testifying will win her over and get you gigs. That's the story." "for someone who claims to have a stalker you seem pretty unscared. Shame on you."*

159.    Gregozek will follow the alleged posting that Notaro's lawyer would report as coming form facebok,  that with " *Due to the content and writing style of the messages. Notaro strongly believes that the messages originated from Spitzberg.*

160.    According to the discovery handed the defense only on March 12th 2009, John Gregozek, obtained a "delayed notificiation" search warrant and then three delayed notification "return to search warrants" with these words in bold

**.There is probable cause to believe that discolure of these records would impede the investigation, and place victims and witnesses in danger. Therefore, it is requested that the aforementioned web site not notify the subscriber(s) of the request of these records.**

to search AOL, FACEBOOK, AT and T, Peer One Network to link these message to Alisa

161.    According to documents, John Gregozek does not include any of the information he must have, in the course of the most basic invesgitation , and that which has been provided by Spitzberg . Gregozek will only put the stale and long disproven allegations made on April 30th 2008.

162.    The information that John Gregozek has at this point is Notaro's initial phone interview and then the statements Notaro made to the public defender investigatory and the affidavits and the Notaro's and her witnesses testimony in the restraining order hearing.  Gregozek includes none of this and mentions none of this. The motions to Traverse and the opposition will show that the  reliance on the title of this unit and the alleged expertise of Gregozek is the only card they have and it is a fraudulent one.

42 U.S.C. § 1983

163.    In order to obtain the search warrants, Gregozek  will write an affidavit that seeks to improperly influence the judge(s) by telling them, in so many words, that in the case they are in jeopardy he and his partner in the threat managemet unit will be the ones to protect them and … city workers.

164.    He will not include all the information he has learned, for a fact, since April 30th 2008. What is available to John Gregozek as of this date is omitted and Mr. gregozek will lie repeatedly on the police report of August 12th 2008 and now on these search warrants.

165.    Judge Samantha Jessner is willing to issue such delayed notification search warrants on the basis of Gregozek's representations and she will allow him , without probable cause, have such warrants issued that will violate the rights afforded Alisa, Lauren, and Henya Spitzberg and for dates not delineated on the search warrants

166.    In fact, though there must by law be a notification to the parties searched no such notification has ever been made to any of the plaintiffs.

167.    Only on March 12th 2009, 52 days after the issuance and  after a motion to compel discovery was made, was the presence of such  search warrants made known to the defense.  There was no probable cause for  such warrants and  John Gregozek knew this at  the time he drafted them. And, there can be no probable cause offered, and none was, as to why such warrants would be issued as "sneak and peek/delayed notification," warrants when nothing about the facts of this case merited that kind of warrant or any warrant. Later, on it would seen that Judge Samantha Jessner is a judge that is willing to grant the prosecution or the police anything they would want- no matter how unjustified or extreme.

168.    On January 23rd 2009, Defendant Judge Jessner  issues a return to search warrant.

169.    According to all reports that have been handed over in regards to this search warrant nothing found in these extensive searches through so many accounts linked Alisa Spitzberg to any of these postings.

170.    Upon information and belief, on January 26th 2009, John Gregozek receives a communication from someone at AOL that leads him to believe that one of the posting can be linked to Lauren Spitzberg's  Forest Hills, NY Aol account.

171.    On January 27th 2009,  though no one is told on the defense, according to a supplemental dated February 3rd, this" information" comples a Kelly Boyer to file four charges of 273.6a against Spitzberg based on the information that Alisa Spitzberg **is not** linked to any of these posting to a public message board.

172.    On January 29th 2009, there is a return to search warrant requested and a pretrial is scheduled in Case 8CA10541

173.    Also on this day,  and for the first(and last time) Kelly Boyer is present and listed as the prosecutor handling the case.  There will be no mention of charges or search warrants January 29th 2009 and March 12th 2009 come and go and there is no addition or even a mention of such charges.

174.    On February 3, 09 an unsigned supplemental is drawn up where it says that 4 counts were added by Kelly Boyer on January 27th 2009

175.    On February 5th 2009 Gregozek gets a fax from AT an T's Rhonda Compton for reasons unknown.

176.    on February 12th, 2009,the deputy public defender, Franica Tawn,  sets a hearing for an extensive motion to compel discovery filed on January 28th 2009. Spitzberg is never told and so hasno idea that the public defender has filed anything on her behalf. Approximately a week before she checked the file and only saw that continuances were filed. Nothing is ever turned over by the prosecution as compelled, since Spitzberg is not aware of it and it is not in the file when she looked,she can't make  any efforts later related to this motion to compel discovery.

177.    On February 5th 2009, According to another unsigned supplemental dated June 9, 2009 Gregozek and James Hoffman apparently drove to Orange, California to interview a Frederick Brummer Sr. and a  Frederick Brummer at their home and a Patricial Brummer  at her workplace.

178.    On  February 16th -24th 2009,  Spitzberg gets a phone call from a Seargent  Lucie. Seargent Lucie pretends to be calling from the internal affairs division and  asks Spitzberg if she would be interested in "Mediation with Detective John Gregozek." Spitzberg says sure and she just want justice and the truth etc.

179.    On February  23rd 2009, Plaintiff discovers that this Seargent Lucie really works for an LAPD unit called the SMART unit, and tries to find out what is going on but is stonewalled and lied to repeatedly. Show all emails and all evidence sent her.

180. On February 22,23, 27th 2009 , according to discovery handed over on March 12th 2009, Jennifer Waxler, City Attorney, interviews for the first time, by phone, three individual who claim to have been present on July 14th 2008.. The 'interviews" are not signed. Notaro is not interviewed by the City attorney until December 16th 2009, 9 months later, and longer than a year and six months after the charge has been filed.

181. On March 11th 2009, discovery obtained at a later date will who that the prosecution made a rap compliance On March 11[th 2009,] no rap compliance of Jeff Klinger is made but one is made of Jackie Kashian and on this document it lists that Spitzberg now faces 3 charges(show exhibit ) According to the docket and file and discovery and witnesses, Judge Terry Bork and Judge Georgina Ricz, only amended the charges on March 23rd 2009 when Spitzberg called attention to the documents that said "4 charges added".

182. On March 12th 2009, Deputy city attorney, Jennifer Waxler will say on the record that a farretta waiver was granted that day. In that packet of discovery, handed over only on March 12th 2009. Spitzberg is shown for the first time that 4 search warrants have been exececuted since January 21st 2009 for reasons that are based on the fact that John Gregozek is lying and repeating verbatim information he long has know to be untrue. John Gregozek has also drafted an affidavit that telling the issuing judge nothing of value other than he protects judges and city workers. John Gregozek gives no details about this case and will, until trial, write that he is an expert of some sort and that is all.

183. Gregozek will use these tricks throughout and get away with it, time after time, until March 23rd 2010, when the trial judge, alone, refuses to conspire with the corrupt John Gregozek and this malicious prosecution.

184. As directed by Ms. Waxler, Spitzberg calls Ms. Waxler who tells her that the best way if for her to drop off her evidence at their offices on Main Street. Spitzberg did so and was met by a man named Bernie Brown. Mr. Brown told Spitzberg that Waxler was on the phone and would not be able to meet with her but that he would give the package to Ms. Waxler.

185. At no time when Spitzberg in the phone call to Waxler on the phone did anything unusual occure and yet Ms. Waxler, as a means to thwart justice, would lie to the court repeatedly about the nature of the phone calls.

186.    Thought a pretrial was set for April 16th 2009, Spitzberg anxious to present her evidence directly( rather throught the overburdened and apathetic public defender) to the prosecutor has the matter advanced so she can sign a Farretta Waiver again due to the clerical error

187.    On March 23rd 2009, as the transcripts will indicate,  Spitzberg says to the presiding judge, Georgina Ricz, that before she could initial the portion of the Farretta where it says that she must know her charges she needs to understand why it keeps saying, "4 charges of 273.6" were filed " by city attorney on January 27th 2009.  Upon hearing this very valid concern, Waxler and a few other city attornies that stood with her at the podium began to feverishly look through many documents.  Soon thereafter, Ms. Waxler said, " Yes, your honor, we want to amend the complaint but we'll be happy to wait to do so on April 16th 2009."

188.    There Judge Ricz made some suspect ruling that despite the public defender having declared that there was a "conflict of interest" a public defender present had to represent Spitzberg to the courtroom of Terry Bork in division 55 before she could be granted a farretta waiver.

189.    According to the minutes and the transcripts, Spitzberg was sent to this empty courtroom of Judge Terry Bork where  he allowed this prosecution to add two charges that Spitzberg, or any reasonable person, could have no understanding of considering the discovery and files and facts of the case as of March 23rd 2009. The deputy public defender told her that the judges just grant these prosecutors everything and there was nothing he could do and to just plead not guilty.

190.    Spitzberg pled not guilty. No reasonable person could understand how a document written on February 3rd 2009 would say that 4 charges of violation of a restraining order were added on January 27th 2009 based on "information given Boyer by Gregozek" and then a document on March 11 would say that 2 charges with different penal codes were already added by March 11th 2009 when the minutes and transcripts will show that these 2 strange charges were only added on March 23rd of 2009.

191.    . No reasonable person should or could understand why the motion to amended was drafted on March 10th 2009 by Jennifer Waxler and filed on March 12th 2009 and yet no hearing took place and no charges were arraigned only upon Spitzberg bringing up, in open court, that

192.    On March 25th $^{and}$ $^{27th}$ 2009- Discovery request sent to Jennifer Waxler City attorney via e-mail and acknowledge but not responded to. Also included in this e-mail and the packet Spitzberg will drop with a Bernie Brown is all the versions and statements by the witnesses in this case.

193.    On March 31st 2009 - Spitzberg hired Howard Williams as she has been told that a "conflict of interest" exists by a public defender and she believed that perhaps she must borrow money to get any chance at justice when such non stop abuses where occurring in this case.

194.    On April 3, 2009, according to documents handed over in discovery,  on February or March of 2010, Bernie Brown serves a subpoana on facebook claiming  that a trial is set for April 16 though.  This  is not the case, of course, and there has never been any explanation for this and no one ever told Spitzberg this until she was sent the discovery by Alissa Malzman sometime in May of 2010. .  in this document, Bernie Brown claims here that Spitzberg ,as of April 3rd 2009,is only being charged with one count  of 273.6a and he doesn't mention the 2 charges this city attorney has allegedly added on March 23rd 2009 or judging by the other documents- January 27th 2009, March 10th or 12th of 2009.  Later on these counts will not be mentioned in many  other documents. Long after they allegedly have been "amended.

195.    On April 16th 2009, the private attorney hired files an informal discover request where he appears to not know very fundamental facts of the case. This was not found in the file until August of 2010 and no evidence is found in the docket of such a filing.

196.    ON April 30, 2009, Jennifer Waxler sends the private attorney, Howard Williams, the curriculum vitae of  a Sam Moreno in response to we'd assume the discovery request. Such a resume will include two page list of the qualifications about Sam Moreno and how he worked for the FBI and even Homeland security.

197.    On May 14th 2009, John Gregozek receives an email from the Facebook lawyer Nifoolar Naziri, telling him that he can't give him any more than he's given him.

198.    On May 15th 2009, Mr. Williams sent Spitzberg an e-mail where he told her that he filed a discovery request for a more detailed statement of anticipated testimony from their expert but failed to file the motion to traverse he'd long promised.  Spitzberg wrote Mr. Williams back and implored him to not allow anymore continuances.

199.     On May 26th 2009, Mr. Williams wrote Spitzberg that the motion to traverse was still in progress and had to be filed by the end of the week, after Spitzberg implored him to tell me why at this late date and after he had told him it was long due. All the e-mails exist of Mr. Williams representation at that time and it clearly shows that Mr. Williams is not doing his job and is lying over and over again about filing motions or the time in which he files them and he is not making any good faith effort to advocate for Spitzberg.

200.     On June 8th 2009, Mr. Williams promises Spitzberg to send her the motion to dismiss he says he has prepared to file on June 9th 2009. Ms. Spitzberg tells him that she will be in court to see him argue the motion to traverse that he said he has told her will be heard on the next day, July 9th 2009.

201.     When he does not send it and she asks again Williams will begin a series of lies and misprepresentations that will damage Spitzberg and be used against Spitzberg by the malicious prosecution.

202.     Williams does not mention the hearing on the motion to traverse or the motion to dismiss and he will claim that the city attorney just sent him a 35 page opposition motion and that "we have no choice but to request a continuance to properly research and respond. " Spitzberg will have to plead with him to send the motion and when he finally does send it late at night, she will see that such a motion was sent to Mr. Williams on July 8th 2009 at 5.11 PM via fax and that it is three pages .

203.     The illegally obtained delayed notification search warrants are attached but no one could in good faith present it as a "35 page motion" or allow the prosecutors a lengthy continuance considering the time already that  has passed and the facts of the case.

204.     On June 17th 2009, the transcripts of that proceeding, will show  that Stanley Lieber was in court, not Mr. Williams and  that it was this day when the motion was filed but not entered into the minutes.  The transcripts will also show that Mr. Leiber requests that the motion be heard on July 9th 2009 but that Ms. Waxler says that it is her position that the motion is late as it was due by May 14th 2009.

205.     Waxler will futher  allege that this motion was filed at 11.05 that morning.  It appears that the judge says," All right. Thank you." Then the prosecutors ask for a continuance and it is granted. It is unclear if any hearing is set or what the judge's ruling is. Mr. William has clearly been lying to Spitzberg for reasons not entirely clear. The

traverse will set out why there was no probable cause for the search warrants but this document will be ignored and it's filing is still in question.

206.     On July 9th 2009, transcripts will show, Jason Lieber went into Division 40 for the pretrial hearing and that the prosecutors said they were ready for it. The transcripts will show that Jason Lieber requests that the "motion be trailed" till July 29th 2009. Mr. Lieber states only " We received the opposition last night, your honor."Then there appears to be some off the record communication from Mr. Williams to Ms. Waxler wherein Mr. Williams indicated that he would like to subpoena Detective Gregozek. All these facts will be lied about later on and the reason for Williams withdrawal will be lied about to the detriment of the plaintiffs.

207.     Waxler will then improvise that Gregozek is on vacation till July 30th  and would not be able to make it by the 29th. Later documents will show that Detective gregozek was working on this case and making phone calls during the time period where Jennifer Waxler says he is on vacation.

208.     The court will sugguest August 18th 2009 and despite Spitzberg pleadings to not allow continuances this Jason Lieber, who should not be in the court at all ,as Howard Williams was the lawyer she retained, says, "That's great." The court then says, "I'm sorry August 6th" and Waxler says that's not a good day, for reasons unknown.

209.     Apparently, at this hearing, Mr. Lieber is communicating with Williams via a blackberry, and he informs the court that Mr. Williams says that anytime after August 3rd is acceptable. The court says August 4th 2009 and both sides and court agree that that will be the date to hear the motion to traverse. Waxler then talks about how they have agreed on an 8 0f 10 and she wants the court to set that for September 1st 2009. The judge denies this request and suggests that she's put it. Mr. Leiber then says " So we currently have no jury trial date set right now?"The court says, "Our pretrial date is August 4th and mr. Lieber says, "OK.OK. This will all be very significant considering the e-mail Mr. Howard Williams will sent Spitzberg and the effect of his prevarications and outright lies on the course of this case.

210.     Also on July 9th 2009, Spitzberg has come to court to witness the hearing on the motion to traverse but when she arrived in the court it was too late and the case had been heard. Spitzberg went to to see what the minutes said and to make a copy of the file and discovered that nothing regarding the filing or hearing of any motions could be seen in

the file or the minutes of the court on July 9th 2009. When she got home she wrote  Mr. Williams these concerns and rather than telling her the true nature of his involvement and what happened in court that day he wrote an e-mail that was written in bad faith and that misrepresented the facts. Mr. Williams wrote this and it is clear that when faced with his incompetence he made efforts to place the blame on the defendant. In fact, Spitzberg never contacted Notaro and no link was ever found to connect Spitzberg to any of the alleged guestbook or facebook allegations.

211.     What then happened on July 9th 2009. according to the transcripts is that the Judge, Mary Lou Villar, would say "these are serious and significant charges" and there would be unrecorded sidebars where Waxler was allowed to approach with "evidence" that turned out to not be evidence at all. In fact, it was that someone named Lauren wrote about attending a show of Notaro's in 2005.  Deputy city attorney Jennifer Waxler is attempted to fabricate evidence in order to jail Spitzberg. The documents that exist show that Waxler is now doing anything she can so as not to "lose" this case.

212.     Spitzberg had never heard of Notaro till 2007 and Notaro knew this and this was not any evidence that would satisfy any reasonable person.  Yet, Mr. Lieber, did nothing to counter the judges gross mischaracterizations.

213.     The transcripts when compared to the e-mail show that either Howard Williams is being given false information by those present on July 9th 2009 or he is purposely lying. Nothing Williams  says in that email is true when considering the transcripts. The transcrips were only ordered months later and so the truth was not know till then.

214.     Mr. Williams would then pretend to feel threatened as means to turn deflect his bad faith acts and such actions will cause great damage to Spitzberg. The e-mails of that time period show what happened and later the withdrawal of Williams, due to his actions, inactions and outright lies will be used against Spitzberg in the most egregious ways.

215.     After this, Williams would not respond to Spitzberg calls and Lauren Spitzberg who had paid Mr. Williams the 4 thousand dollar fee called and talked to Jason Leiber who was rude and Lauren Spitzberg said to Mr. Leiber that if Mr. Williams would not call soon she would call the police for theft or fraud because this was outrageous etc.

216.    Spitzberg alleges that at some point Mr. Williams became a willing conspirator in the malicious prosecution or just became to scared of alienating the wrong people and abandoned the case .

217.    While the motion to traverse is set to be heard on August 4th or August 12th 2009(the record is unclear) according to the file and the documents, James Hoffman has Judge Mary Lou Villar issue another delayed notification search warrant

218.    On July 29th 2009 , Judge Marly Lou Villar, allowed Mr. Williams to withdraw despite Spitzberg's filed motion to oppose the withdrawal. The motion to oppose the withdrawal sought to prove that the withdrawal was a result of Mr. Williams malpractice and fraud and Judge Mary Lou Villar refused to read it and said, "It just means you can't get along with your lawyer," The transcripts have been requested and will show that no due process was being afforded Spitzberg and that Judge Marie Lou Villar was following no law in the handling of case 8CA10541, on many occasions.

219.    Also on July 29th 2009, Spitzberg filed four motions with the court but the clerk , Susan Rios, insisted that she was too busy to set them for hearing and that Spitzberg shoud call her the next day and it would be done.

220.    Later, documents would show that Mary Lou Villar, or her clerk, had set a motion for a traverse meeting for August 12th 2009 .

221.    The motion to traverse  would have so undermined the prosecution's case and would have so exposed the illegality of the search warrants and   all had to be done by this malicious prosecution to avoid such an outcome.

222.    A remand hearing is set for August 4th 2009 based on fabricated evidence proffered by Jennifer Waxler. Such a hearing will come and go as no evidence could exist to support a remand or any alteration to Alisa Spitzberg's O.R status.

223.    Found documents will show that motions were being scheduled but not put on the minutes and then the motions were never heard due to the serious abuses and denials of due process that would mark this prosecution .

224.    Judge Villar, after allowing Williams to withdraw without any due process, sets a pretrial for August 12th 2009. after Howard Williams files a motion to withdraw when Spitzberg discovers that he has been lying to her repeatedly about many serious matters.

225.    Spitzberg is aware of the image and poor treatment given pro pers, but has been recently  advised by the public defender, a Kratu Patel, that there is a "conflict of

interest,' and then told that that was a mistake by the judge, and so they will not allow the alternate public defender to help.

226.    Spitzberg is sure that they will try to pain her as difficult if this lawyer withdraws. Considering this, Spitzberg wrote a motion to assure that the facts underlying the withdrawal of Howard Williams was clear.

227.    Judge Mary Lou Villar would ignored this filed motion and would make ruling in this case repeatedly that show a profound disregard for the law. An attempt to recuse her would be regarded as "moot" by a Judge John Martinez when in fact she would come back to make many strange and suspicious ruling in this case.

228.    It is alleged that Judge Mary Lou Villar repeatedly and brazenly is biased for the prosecution as a rule.

229.    Also, on July 29th, 2009 Spitzberg knowing she would be pro per and feeling able to finally take some action filed 4 motions. The clerk, a Ms. Susan Rios, told Spitzberg she was too busy to set hearings now but to call her the next day and she would do so.

230.    The clerk would not set a hearing for these motions and upon information and belief Judge Villar directed her not to in a clear violation of due process. In fact, it was obstruction of justice that occurred with all the defense motions filed in this case.

231.    Any inspection of the file and transcripts will show how all defense motions were purposely omitted from the court minutes and one would have to inspect the file to see that they exist and were timely filed.

232.    On July 30th 2009 Spitzberg called Ms.Rios to set hearings on the motions and was told that she was trying to get in contact with Jennifer Waxler the assigned deputy City attorney and would get back to her. Spitzberg August 12[th-]    These motions are filed by Spitzberg, in pro per.

233.    On August 3rd 2009, a motion to get investigation and proceed in pauperis are filed and once again the clerk refused to set a hearing date on orders of the judge.

234.    On August 11 2009, the clerk informed Spitzberg that Waxler was not ready on the motions and that she had spoken to Ms. Waxler and MS. Waxler was allowed more time, by law. Spitzberg was told she will be coming in for a scheduling conference the next day and that is all.

235.    A "Post It" found in August of 2010, will show that someone in that court, presumably the clerk, was setting hearings on those motions but not notifying Spitzberg.

236.     There is evidence of non stop ex partes in this case.

237.     On August 12th 2009, Spitzberg was told by Ms. Rios that since Waxler was not ready to proceed to come in strictly for a "scheduling conference." Spitzberg believed that is what would occur.

238.     On arrival to Division 40, Spitzberg stood before a judge Samantha Jessner and not a Judge Mary Lou Villar. Jessner is the same judge that had signed the three search warrants in January of 2009. Jessner tells Spitzberg that she must go to a hearing on her motions in division 50 something "forthwith."

239.     Spitzberg made comments on the record that confirm that no motions had been set for a hearing and that these were to be illegal "hearings." No opposition was filed by the prosecution to the motions as further evidence of the due process violations that kept occurring in this case.

240.     Another woman was now working side by side with Jennifer Waxler and Spitzberg recognized her name, Felise Cohen Kalpakian, from the untimely opposition to traverse motion, sent to Williams on the nigh to  July  8th 2009..

241.     In the hallway, Spitzberg expressed more concern and this woman Felise Cohen Kalpakian said it was  just a "oral hearing" not a regular hearing. Spitzberg was completely lost as to how this could be allowed and why these judges were prepared and willing to go along with such lawlessness.

242.     The transcripts made of of August 12th 2009  will indicate best what went on . The minutes also do not reflect any filing of motions, setting of motions,or the nature of the hearing  The hearings held in John Martinez's courts were not legal or just or fair and resulted from a conspiracy. After no legal basis to do so Martinez ruled against Spitzbeg on all motions in this illegal unnoticed "hearing."

243.     At 11. 40 a.m On August 12 2009, Jennifer Waxler was the assigned prosecutor to Case 8CA10541. She has been the assigned prosecutor  since  February or March of 2009.

244.     Yet, on August 12th 2009, Martin Boags, who Spitzberg would later find out is a deputy city attorney city attorney, approached her and her sister, in court,  after the illegal hearing with Judge John Martinez. and said that he noticed that they filed a Pichess motion and that Jennifer Waxler refused to take it because the way it works is that with a pitches motion it has to be delivered to a certain address for proper service.

1    He then began to talk to the woman as he draw a detailed map of where they would
2    have to go to deliver this motion.

3    245.    Spitzberg asked him how it was possible that she received a summons telling me
     how a charge was filed against her on August 25th 2008 and have a summons dated
4    August 19th 2008 , because she just had noticed this matter. Mr. Boags said it was
5    "weird"

6    246.    Kathleen Ford, the city attorney who participated from March 4th till March 23rd
7    2010 would write in a trial brief that the charges were filed on August 18th 2008 based
8    on the knowledge that they'd been caught in another lie . Upon information and belief
9    Martin Boags must have told her that Spitzberg was on to them and that she better write
     that the charge was added on August 18th 2008 rather than August 25ht 2008.
10
11   247.    Upon information and belief all 8 charges submitted and 7 untimately alleged to
     have been filed were sham charges and the evidence will show that.

12   248.    Also on August 12th 2009, three motions were filed with the court and served on
13   the prosecutors. On of them is a Pitchess motion. Upon information and belief, the
14   specter of hearing on the Pitches motion caused the assistance of Martin Boags to be
15   necessitated and evidence exists that shows that had the Pitchess motion not been filed
     August 12th 2009 would be the day that 4 charges would added as opposed to January
16   21st 2010.
17
18   249.    After Mr. Boags talked to the Spitzberg sisters and after the motions were filed and
     once again the clerk told Spitzberg she would not be able to set any hearings, Deputy
19   city attorneys, Jennifer Waxler, and Felise Cohen Kalpakian openly instigated the
20   competency ploy that would mark the darkest chapter in this malicious prosecution.

21   250.    Those in Division 40, at 11. 40 A.M and after witnessed an illegal and ex parte
22   where a competency ploy is instigated with the permission and then assistance of Judge
23   Samantha Jessner and the transcripts memos , and witnesses will show that a conspiracy
     to deprive Spitzberg her rights and freedom and which took on a "no holds barred"
24   quality really began on this date.(see Malzman memo and all documents to do with
25   August 12th 2009)

26   251.    On this date , August 12th 2009, unbeknownst to the defendant until May of 2010 ,
27   , Martin Boags has written up 4 charges, based on alleged events that happened in April
28   of 2008. There is no evidence of it being filed that day. It only will show up as filed on

January 21st 2010 when 31 days of coercive confinement and a competency ploy fail to get Spitzberg to agree to a plea bargain deal.

252.    These four charges whose arraignment date is August 12th 2009, are never mentioned in any subsequent documents from August 12$^{th\ 2009}$ till January 21st,2010 - after a competency ploy fails, and a blanket search warrant offers only exculpatory evidence.

253.    This time no one even signs the affidavit, and once again there is no arrest though on December 2nd 2009, Judge Karla will cryptically say, "If you are not taken into custody again."

254.    Alisa Spitzbergimmediately began to research the laws and discovered that Judge Samantha Jessner was behaving in ways that trespassed against the law and her rights and was doing so recklessly and with seeming impunity i.e ex parte in front of many public defenders and defendants in that court,the search warrants, not articulating any reasons for such a major ruling, not filling out the necessary paperwork etc.

255.    On August 13th 2009, Spitzberg calls the courthouse and requested to see the order made by Judge Jessner. She was againt given but eventually it is sent to her.

256.    On August 17th 2009, Spitzberg rather than celebrate with her sister on her birthday wrote up motions that attempted once again to stop the damages that were being done to the defendant and the taxpayer, by those acting under color of law. Alisa Spitzberg went to the courthouse to file a motion to void the order and a motion to appoint two. When she approached the clerk, Ms. Susan Rios, Ms. Rios rudely said in a tone of voice easily overheard by those present that she was in "The mental courts now" and Ms. Rios could not file any of these motions. Spitzberg went to the clerk on that floor, Tiffany, and this helpful clerk contacted Ms. Rios via phone from there and they were told to tell me to wait as Ms. Rios had to confer with Judge Mary Lou Villar. Perhaps an hour or so later the clerk filed the motion.

257.    When Spitzberg went home she was told by her sister that her sister had discovered new rules and procedures that were not being followed and Spitzberg drafted a new motion. She went up to the court in the next week and this time once again Susan Rios would not file her motion and this time a new clerk in the main office printed out a minute order, highlighted the portion where the competency was mentioned, and

explained to Spitzberg in a voice one uses on the slow or insane that Spitzberg had no rights in this court and therefore could not file anything.

258.    On September 8th,2009  City attorney Jennifer Waxler is removed from the case, and Tasha Penny and Carlos Ramirez are listed as replacements for Waxler against a Pro Per defendant. Penny and Ramirez are not there and Martin Boags is now the prosecutor., Judge Karla Kerlin is there instead of Mary Lou Villar and she states  on the record that the criminal proceedings are reinstated by  order of Dept 52( Judge Samantha Jessner)  At the sidebar Boags will ask for a continuance because he is going on vacation, and wants to "get up to speed." Later Kerlin will obstruct justice when she conspires with  Boags to punish and discredit Spitzberg in an attempt to subvert justice.

259.    Also on Septmeber 8th 2009, Judge Kerlin says on the record and at the unrecorded sidebar that the competency matter is vacated, and there is no argument.  Spitzberg agrees to the continuance because of the Judge's prodding at sidebar "Marty is  a good guy and I should trust him etc."- I agree to wait for Mr. Boags to "get up to speed " on his vacation. "  and after I am told that he will happily take a look at my evidence. I sent him  the evidence. (show all e-mails to boags.)At sidebar, competency is only discussed when Kerlin say it's  "Vacated'.  In a Motion filed with the clerk on September 29th 2009 and send to Spitzberg on October 1st in the evening, Mr. Boags lies  repeatedly about what occurred at that sidebar and the Judge Karla Kerlin allows it for no good faith reason.

260.    On September 9th 2009, Spitzbeg  was assured by a Public Defender, Robin Ginsburg, who witnessed the ex parte and the instigation of the competency ploy that this was just a delaying tactic or in her words " you are being dicked around."  Ginsburg told Spitzberg that there was no way Spitzberg could ever be found incompetent and after Spitzbeg asked her Ms. Ginsburg said she would happily supply affidavits where she and other public defenders would testify to what she saw in regards to what she was seeing it this case. She told Spitzberg that she knew other's names, particularly the public defender who was told to "shut up" by the prosecutor and he too would be willing to sign an affidavit. Hoping this to be so and pleased that she had witnesses who seemed willing to be of assistance,

261.    Spitzberg, her mother, and sister woke up early to go this court. It was very painful and produced great mental anguish as it seemed a malicious tactic that couldn't be

tolerated in an American court, but without funds to seek out assistance the women went to that court. There no one was present for the prosecution and a Pro Tempore judge spoke on the record and made statement that a mistake was made and that he knew about everything beforehand and the minutes will say that "criminal proceedings were reinstated" that day.

262.    It was unclear what this Pro Tem who Spitzberg did not stipulate to ,was saying occurred but when Spitzberg requested she be able file the motion that the clerks in the Clara Foltz courthouse denier her, she was told that this court no longer had jurisdiction and when Spitzberg expressed mild frustration with what was occurring a bailiff ran to remove her and her family from the court.

263.    On Sept 10th 2009- Martin Boags sent rush orders to the police to get information that should have been sought on April 30th 2008 by John Gregozek . A year and 5 months after such information should have been sought, Martin Boags discovers that nothing he has been told is true. Jennifer Waxler, City Attorney till now has consistently told the Tribunal that she is working with the Threat management on an investigation since March of 2009.

264.    On September 11th, 2009- Martin Boags is sent an email with an attachment where he is shown all the statements and witnesses that proves Spitzbergs innocence .

265.    On September 14$^{th,2009}$  the records are sent to Martin Boags and he sees that in fact no police were ever called on April 12th 2008 and that no police report or arrest were made on April 29th 2008. This doesn't stop him and he doesn't not inform anyone of this. On May 4th 2010, nearly seven months later, the prosecutor who took this to trial, Katie Ford, with sign her name to a trial brief where she will state as fact that the police were called and arrived on April 12th 2009 and that Notaro was pushed on August 29th 2007. Katie Ford would have to have know due to the documents and the witnesses who had come forth  that she was signing her name to allegations that she long knew had proven to be false.

266.    On September 14th 2009, Mr. Boags is fully aware that Notaro and her alleged witnesses have lied about the police being called not to mention arriving.  But, more importantly, here Mr. Boags is contending that the case was suspended , and yet he was working on it and even conferring with the judge Ex Parte. Also of note, these city attorneys repeatedly tell judges how they are working with some Elite Detective unit to

1    prosecute me and yet this unit never came up with this.

2    267.    On September 29th 2009 ,Boags writes a motion  and sends it to anyone " sitting in

3    court 40" and not to the defendant, as required by law.

4    268.    Mr. Boags is attempting  subvert justice by such repeated lies and therefore on

     October 1st 2009 the defendant receives a copy of the opposition in the evening. Other

5    than the lies Boags will later make about what  happened at sidebar, another lie is

6    preserved for the record by this "compliance motion."

7    269.     Boags states in this motion that "After multiple court proceeding, Judge Jessner

8    determined that a doubt as to Ms. Spitzberg's competence to stand trial."

9    270.    Judge Jessner only saw Spitzberg  for the first  time , as evidenced by the minutes,

10   discovery and transcripts, and record of this case. Mr. Boags again is lying  in the most

     dangerous and egregious of ways. On September 10th , 2009 Boags, sends away for

11   records that by all rationale should be available to Gregozek in May of 2008 and then his

12   office by August 12th 2008.

13   271.    On September 11th  2009, and onwards, Spitzberg will  write Martin Boags emails

14   and attach files to those eimails   that attempt to re-alert ths prosecution that theirs is a

15   malicious and baseless prosecution that can't be sustained when such evidence and

     witness exist. Mr. Boags will acknowledge receipt of those e-mials.

16
     272.    On September 14th 2009, Martin Boags finds out that no police were called much

17   less arrived "at the scene" on April 12th 2008. as alleged by the false witnesses and

18   defendants, Notaro, Sievers, Griffee and Flanagan.  No one tells the defendant this and it

19   is only seen  discovery given her in late May of 2010. Notaro will tell Boags these lies

20   again as late as December 16th 2009 . Boags will then be off the case and Katie Ford,

21   city attorney, will sign her name re-alleging what she knows to be false as late as March

22   4th 2010 when she will sign a trial brief where she will state that the police were called

     and arrived on the evening of April 12th 2008.

23
     273.    There can be no reasonable explanation why the Detectives from this unit that are

24   allegedly investigating would not have this in their possession or  as to why, Jennifer

25   Waxler, who repeatedly says to judges that she is working "closely with the threat

26   management unit" would not know this by now. In the course of any investigation such

27   information  would be requested immediately.

28   274.    Boags et al also discovers that no arrest report or police report exists regarding the

alleged events of April 19th 2008. Not only does he not present this information, as required by law, but he will then list Officers Badar and Officer Montalvo on his Witness list.

275.    On September 29th , 2009,Boags will file a motion with division 40, which he will call a " motion for 1398 compliance." This is discovered by Spitzberg on October 1st 2009 when Boags sent it to her address after 5 .PM. In the motion, Boags does not mention the ex parte that occurred with Kalpakian and Waxler and he completely lies about what occurred at that sidebar. He lies about Judge Samantha Jessner being there to see Spitzberg many times. In fact, Jessner had never laid eyes on the plaintiff until August 12 2009 and that is confirmed by the court minutes and any transcript of all court proceeding in this case.

276.    In the late evening of October 1st 2009, the plaintiff receive an copy of said motion in the evening and it does not include the handwriting of Karla Kerlin to be found in the file, where Kerlin writes to Judge Robert Vanderet , " Order her to department 95 on October 16th 2009." Judge Kerlin could not have had the jurisdiction to make such orders and she once again is having ex partes with Martin Boags and now is having one with Judge Vanderet. There are non stop ex partes and Judge Kerlin is obviously and willingly conspiring in this malicious prosecuton.All rules of notice hearings, and ex parte, have been disregarded , at best

277.    On October 2<sup>nd,</sup> 2009 The plaintiff came to the pretrial and spoke to Martin Boags in the hallway and she asked him isn't he worried about appeals and writs in that this prosecution was so obviously fake and malicious . Mr. Martin Boags said, " I'm not worried, *You're done*. I've got it all wrapped up." As evidence by the transcripts that now exist as to November 23rd 2009, Mr. Boags did believe he had already "won, " and a as evidence by the files in court 95, his idea of winning was something expected only in the dark ages.

278.    Karla Kerlin , for no understandable reason, will send Alisa Spitzberg to the court of Robert Vanderet, without a lawyer and under the false pretense of a hearing on motions. Understandably, very concerned, Spitzberg asked the supervisor of the misdemeanor public defenders to please supply her with a witness, because this is not making any sense and she is scared. And, this supervisor, Robin Ginsburg, has indicated

to Spitzberg that she is aware of the malicious nature of this prosecution and may want
to assist her.

279.     Robert Vanderet's courtroom is empty except for Spitzberg, Vanderet, and Boags,
and Spitzberg is glad and grateful that Robin Ginsburg has supplied her with a witness,
Alissa Malzman, a deputy public defender.  Spitzberg begins to hope that the public
defenders will do something, when witnessing so much laws being broken and such a
disregard and abuse of a defendant is occurring, time after time ,and right before their
eyes.

280.     The transcript of the proceeding with Robert Vanderet indicates his participation in
the conspiracy and malicious prosecution of Spitzberg . Judge Vanderet doesn't appoint
counsel until Ms. Malzman suggests it and he makes statements that only one judge can
do this job, a Judge Maria Stratton. Very curiously, Robert Vanderet claims that Karla
Kerlin signed a transfer form and he sees it right in front of him. No such transfer form
by Judge Karla Kerlin or Judge Samantha Jessner will ever be  seen in the file then, and
till the present day. Judge Vanderet acknowledges the motions Spitzberg filed and makes
all kinds of statement that attempt to, we'd assume, silence the defendant until Martin
Boag, is "done."

281.     Vanderet sends  Spitzberg  back to Division 95 on October 14th and very curiously
makes several bizarre statements and sets a pretrial in the criminal court for October 21st
2009 . Like Jessner, he is setting a 7 day period to resolve "competency," and
considering the nature of "competency proceedings," that doesn't make sense. Also,
October 21st 2009 will not be the day where  Judge Karla Kerlin will have an ex parte
hearing in her court.

282.     Spitzberg was then told by the  supervisor of the PD's, in that court, Robin
Ginsburg, to leave Division 95 if she sensed that things were "fishy,' as there was no
possible way anyone could find her "incompetent" and this was all an obvious ruse or in
the words of Ginsburg and then Malzman, "They are just dicking you around" Spitzberg
also spoke to the public defender, Malzman, assigned in Vanderet's courtroom on
September 8th 2009 and she told Spitzberg that this was an obvious ploy and that she
would write a memo to that court to tell them what "was up."

283.     Spitzberg told Malzman that she believed that they would fraudulenty make her
out to be incompetent to  some how because this was very out of hand and they knew

they would lose at trial and face a lot of liability.  Spitzberg also believed that this was a part of the plan to discredit her in the case she ever did extricated herself and file suit. Malzman assured her that she'd be fine and the prosecution was just stalling .

284.    On October 14th 2009, at 8:30 A.M, Spitzberg and her family went to Division 95 with the directions of Ms. Ginsburg in mind. When they arrived rather than Ms. Malzman they were told that a woman named Everman would be the public defender and that Spitzberg should talk to a Doctor by the name of Velarde.  Spitzberg asked Everman if she got a memo from Malzman and Everman seemed and said she was oblivious to such a memo and would later say that she only received the case at 9.AM that morning. Spitzberg could not understand why Everman directed her to talk to Velarde but would not accompany her.

285.    Spitzberg spoke to Velarde and Spitzberg's sister eavesdropped outside as she knew that Spitzberg was denied a witness or a lawyer to accompany her. Dr. Velarde knew that Spitzberg was very competent by any standard.  He asked some questions about the roles of judges and juries etc, and then said that he had to go talk to the judge because he didn't feel this case made sense to him as it was going on too long and seemed "strange,"  Spitzberg and her family waited outside the courtroom as he "talked to the judge". He went to talk to Judge Maria Stratton. Within 5 minutes,  Ms. Everman came out and said, " He found you incompetent."

286.    It was now abundantly clear that this was a "set up,"  It is alleged that Judge Maria Stratton is a corrupt and malicious judge who was willing to institutionalize and destroy a bright and innocent person for reasons that can't be understood by any reasonable man. Soon the documents would show what she was willing to do for no understandable reason.

287.    Almost immediately, Spitzberg called Ginsburg who was very shocked and sounded frightened. Ginsburg said, "I was just kidding about leaving. Go back." Spitzberg realized that Ms. Ginsburg, for inexplicable reasons, would not protect the interests of her . Ms. Ginburg appeared frightened of her boss, Mr. Hoagie, and later it would be seen that Mr. Hoagie was averse to helping in this case due to reasons not entirely known but that relate to political concerns and not the pursuit of justice.

288.    Spitzberg sought  out a lawyer with a loan from her mother and other family members.

42 U.S.C. § 1983

289.     The minutes and documents related to that time period will show that on that day Judge Maria Stratton directed a Dr. Francisco Velarde to subvert and obstruct justice by writing up a report that is based on obvious fraud and lies considering the other reports, the law, Spitzberg's 40 years of competence, and the facts of the case. Judge Maria Stratton became a conspirator in this case.

290.     On October 24th 2009, Spitzberg learns from a letter that there was a bench warrant for her arrest. The public defenders, Robin Ginsburg, Alyssa Malzman, and Bernadette Everman will not return her calls and yet Everman is now claiming that she is calling Spitzberg and her family. This never occurred. Spitzberg will begin making non stop calls to lawyers , as very recently, her mother got a loan from family members in case of such an emergency and for living expenses etc..

291.     In documents since discovered, we see that Kerlin is giving orders to the clerk or Boags to check if Spitzberg **still** has a bench warrant . And, though there should be no proceeding ,and the defendant's counsel is not present and the defendant is not informed, Judge Karla Kerlin is setting a date for a meeting on the November 23[rd 2009 in that Division.]

292.     Kerlin has no jurisdiction and where is Spitzberg's lawyer? Even later, it will be discovered that Ginsburg makes some weak attempt to take this case off the calendar but Judge Karla Kerlin is anxious to not have this case "get lost" and so she flailingly attempts to use methods to hide her complicity.

293.     Upon information and belief, throughout, Gregozek and the city attorneys are looking themselves up on Spitzberg's blog. Spitzberg called Gregozek a "kielbasa" and that post is getting many hits from a Huntington beach locations.

294.     Though no public defender is present, Kerlin and Boags, are present and discussing the case on November 23rd 2009 for no legally understandable basis. There is no evidence of defense counsel thought at that time it is long known to the defense that Spitzberg has retained James Silverstien , a private attorney , on November 3rd 2009.

295.     On November 3 2009 ,James Silverstein was retain for 10 thousand dollars because she is told by a Peter Knecht, who claims to be well experienced with malicious prosecutions, that the case has become "impossibly complicated.". Spitzberg wants the bench warrant cleared up and Silverstien and Knecht amongst other lawyers she contacted beginning in October 14th 2009 that it is not something to worry about considering the circumstances and facts of the case. Spitzberg and her family, however,

are very worried because they know what this prosecution was willing to do, and now what his Dr. Velarde was willing to do and then upon information and belief what this Judge Maria Stratton was doing. .

296.    On November 4th 2009- The whole LAPD's threat management unit will come to arrest Spitzberg and make a blanket search of her property and that of her family. They take many items into custody and will keep them until after Spitzberg is aquitted at trial. No interview is made of any of the Spitzberg and no return to search warrant has ever been produced as to this search warrant.  Spitzberg is not told why she has been arrested and will never find out. No charges will ever be brought based on this arrest. No probable cause does or can exist for the arrest and search and seizures and such an arrest only took place by a SWAT TEAM to scare Spitzberg into accepting a plea bargain, as evidences by the documents, transcripts and witnesses in this case.

297.    Spitzberg would be kept in jail from November 4th till December 4th 2009 and the whole time despite the fact that she was being declared incompetent to stand trail by fraud and there is mention of a psychiatrist, Spitzberg is denied her antidepressant and anti anxiety medicine while in jail for evil intent. Many requests were put into the sheriffs department to get such medication and they were ignored.

298.    Later it would be discovered, that the pretense of such a blanket search warrant issued by a judge Craig Richman was- that on August 22nd 2009 Notaro is now alleging something wrote two messages to her guestbook and she believes that Spitzberg did it. Such a search warrant was drafted and then issued in bad faith and the involvement of Judges Richman and Wilcox is still being investigated. Nothing of any evidentiary value resulted from these illegal warrants and no charges were even brought.  There exists no probable cause for the arrest, jailing, and searches.

299.    From November 4th 2009 till December 4th 2009, Spitzberg is  kept in jail. Judge Maria Stratton will repeatedly deny Spitzberg any bail and such a decision goes against all law and must not be tolerated .

300.    Spitzberg was denied all her depression and anxiety medications while coercively confined and this was done as a part of the conspiracy to "break" the defendant down so she would plea and go away

301.    On November 19th 2009 despite Henya Spitzberg informing the appeals court that they will not release her daughter from custody and that she is there for no reason the

appeals court rules and affirms . It will be shown that this was a fraud and upon information and belief, the timing of the coercive confinement was particular and was done to prevent Alisa Spitzberg from going to the oral hearing of the appeal.

302.    On November 23rd , 2009 while Spitzberg is  represented by the private lawyer, Judge Kerlin again is alone with Boags and she is setting another date for further proceedings and she is writing that there is a non appearance. Boags will tell her that Spitzberg has been declared incompetent though, as can be seen by all documents and transcripts,  this is not the case at all.

303.    The minutes of the court , the files, and recently obtained transcripts will bolster all allegations of Judge Karla Kerlin's complicity with the prosecution in this case.

304.    On December 1st 2009, Spitzberg is suddenly and uncontestedly declared competent without a hearing, after being interviewed by a Dr. Dupee who was brought in on behalf of the defense. Spitzberg, after the DA in that courtroom concedes he doesn't know about the case, is told that she can get out on 10 thousand dollars bail.

305.    Something goes wrong with the bond and case number and Spitzberg is not released from custody until December 4th 2009.

306.    A phone message is left on Spitzberg's answering machine after she bonds out from this coercive confinement. A male voice says, "We just want you to leave us alone."

307.    James Silverstien who till now has not talked to one witness or made one motion despite the circumstances of being able to stay the appeal, bail motions etc, says he can only have a pretrial on January 13th 2010 and the judge agrees. All this time Spitzberg's computers, library accounts, and other seized items are being searched by, according to documents, a man named Sam Moreno.

308.    On December 2nd 2009, though there is no reason for any bail as Alisa Spitzberg never compromised her Own Recognizance condition. Judge Karla Kerlin, willfully and maliciously will not lower the bail and is ready with fraudulent excuses for not doing so.

309.    Due to this and a "mistake" in processing, Alisa Spitzberg is released in the early morning of December 4th 2008 after posting eight hundred dollars bond.

310.    On December 16 2009, (it is later learned learn from discovery sent by the public defender in May of 2010) that for the first time since this case began in August of 2008

Martin Boags decides to get a statement from the alleged victim. As are all statements in this case, this one is unsigned.

311.    On this date when Mathilde Notaro repeats the allegations he knows that she is lying as he has ordered the reports that show this on September 10th 2009. But this doesn't stop him. Instead, he still will add 4 charges that no reasonable person would understand or accept and that were added strictly as a last gasp effort to get this innocent defendant to plea.

312.    According to documents, the date of the arraignment of these charges that Boags allegedly wanted amended on January 21st 2010--   is August 12th 2009.

On January 13th 2010- at pretrial Silverstien on the record   tells the judge that he must put on the record that he has advised Spitzberg that If she doesn't take the offer she will face a  much more punitive outcome.  When she expressed shock, off the record, at this- Mr. Silverstien says he will withdraw from the case.

313.    On January 21st 2010, James Silverstien withdraws, at an unrecorded sidebar, without consent or any say in the matter. After he withdraws he informs Spitzberg that four charges have been added but they have nothing to do with the search or the warrants but are based only on the allegations made in April and July of 2008.

314.    Though the statutes of limitations are over and no reasonable judge could allow the addition of such obviously fraudulent charges, Judge Mary Lou Villar is making no attempt to hide her bias and complicity and she will allow Boags to add such charges by "interdelination". The most basic scrutiny will show that such charges could only be added by fraud and evil intent.

315.    Alisa Spitzberg is represented by the public defender, after the charges are added, and Alissa Malzman volunteers, on the record to do so. Spitzberg holds out hope that this time the public defenders will rise to the occasion and attempt to get justice in her case.

316.    Malzmzan, now Spitzberg's lawyer, they meet at the courthouse. Malzman tells her that Boags just sent her an e-mail, unsolicited, and that he just wrote something to the affect that this is the last time he will offer a plea.

317.    Ms. Malzman will tell Spitzberg at that meeting that Spitzberg is a victim of a malicious prosecution and that" everybody knows," She will also tell Spitzberg that she has a friend at the city attorney and that "all the city attorneys read your blog and know

about this case. " She tells Spitzberg that Boags is trying to "make his name by winning your case," and "don''t be surprised if I plan to make my name on this case but it's not about me. You are being maliciously prosecuted." Spitzberg is very shocked and doesn't know what to make of such information.

318.   On February 22nd- 2010- Spitzberg learn that the Police officer, Jaqueline Montalvo, listed as a witness for the prosecution is going to testify for the defense and has told the deputy public defender, Alissa Mazman, that she never wrote a report that night because she determined that no crime had been committed. That is all Malzman will tell Spitzberg but common sense and protocol dictate that Ms. Montalvo who had interviewed Notaro and others that night would have much notes and testimony that would help Spitzberg.

319.   In the next week Spitzberg finds out that the witnesses have come in, and are on call for trial.

320.   In between, Spitzberg will discover that Malzman might or might not have good intentions regarding her case and she is sure that she has again made the mistake of putting any faith in this public defenders office.  She will learn that though Malzman might be trying her best this case is "impossible complicated" and the overburdened public defenders, even if they wanted to, could not know the case as she does.

321.   On March 4th 2010- Spitzberg finds out from the public defender, Alissa Malzman, that Boags is off the case, that the defense witness, Officer Montalvo has died in a car crash, and that they have dropped the four charges added on January 21 2010.

322.   Also on March 4th 2010, Kathleen Ford, the deputy city attorney now assigned the case since the removal of Waxler and Boags, writes out a trial brief that is full of abject lies, that Kathleen Ford knows to be lies.

323.   Kathleen" Katie" Ford will have many city attorneys coaching her throughout the trial and she will take 4 days to complete jury selection and she will use all her preemptory strikes and make many inappropriate remarks to and shamelessly lie to the jury and judge throughout.

324.   She will then request that the fraudulently obtained Criminal Protective order granted without notice and hearing on September 25th 2008 be used to add two counts. The judge is disgusted and refuses the request. Katie Ford then begs the judge to just allow her to show the jury this illegal order. Kathleen Ford committed serious

misconduct in this case and behaved in a way that soon alerted the trial judge that this was in fact a very malicious prosecution.

325.    Upon information and belief, the judge realized that the 4 days of voire dire and the "homeland security" detectives had succeeding in duping a majority of the jury and he used his discretion to dismiss the last remaining count in the interests of justice.

326.    The prosecution, at trial, frantically tried to keep any reference to anything predating the issuance of the void restraining order as they knew it would open up the case to the witnesses that were on call for the defense. Suddenly, after nearly two years of malicious abuses and waste of the city's resources, the prosecution appealed to "judicial economy" as evidenced in the transcripts of the trial. The judge , under duress, agreed to not allow the collateral attack of the underlying restraining order, as allowed by law.

327.    The decision to not allow Alisa Spitzberg to be her own counsel and the decision to not allow a collateral attack on the validity of the restraining allowed a hung jury rather than an acquittal with a finding of factual innocent in the charge dismissed in the interests of justice.

328.    There can't be another trial in this circumstance but it must be known that the trial transcripts coupled with the files and witnesses will show that the jury were in possession of jury instructions that said this was a case of domestic violence etc when it clearly was not.

329.    Actual innocence standards and probable cause theories now may come into play. Such theories should be based on the evidence that exists and existed at the time of trial . The hung jury nor the reality that the prosecution took this to trial are not any indication of the merits to their case or their reasonable belief that they had a case. They knew they did not, as evidenced by the transcripts of this trial, and what all the law enforcement defendants would be willing to do to obtain a conviction..

330.    On the last remaining count, the jury was bamboozled - led to draw conclusions based on testimony that would have been impeached had Spitzberg had any advocate or been allowed to be her own lawyer. Also the spectacle of 6 witnesses, 4 days jury selection, 7 search warrants and 12 days of a trial for what would amount to a one count

misdemeanor must have swayed the eleven to assume something big and bad must have gone on to merit this much manpower etc.

331.     Afterwards, a juror was overheard telling Katie Ford this, " We figured we were missing something. So many holes." Evidence will show that no proper defense was mounted on that count, despite a world of exculpatory evidence in the possession of the defense. In fact, the public defender seemed intent on not offending the prosecution by winning all charges and that too needs to be addressed to understand the hung jury and the judge's dismissal in the interests of justice. Had so many acts of retaliation not occurred and had due process not been violated so brazenly and repeatedly, such favorable dispositions would have appeared even more favorable and would reflect the true nature of the prosecution and those who participated. The transcripts of the trial, witnesses, files and discovery show the vile character of the prosecution in case 8CA10541. The overburdened public defender, representing Alisa Spitzberg at the trial, did not have the resources to supply the needed advocacy and the dispositions, as they are, are merely reflective of how very bad and weak a case the prosecution had considering the exceptional amount of resources they had expended in railroading a person they knew to be innocent.

332.     The trial judge and public defender noted the unusual level of these expenditures on the last day of trial. It is known by the public defenders office that this was a malicious prosecution. The public defender at trial, Alissa Malzman, represented to Alisa Spitzberg that this was a very malicious prosecution, due to the city attorneys reading her blog, and that she was being "railroaded."

333.     Since the trial ended Alisa Spitzberg has sought to seek redress for her grievances by bringing suit for legal malpractice against the paid attorneys who took her money but yet abandoned her case without doing what was contracted.

334.     All attorney have demurred with "actual innocence" as their argument. This will cause a lenghty and costly "trial with in a trial" and though Alisa Spitzberg welcomes the chance to have a fair hearing and trial on the underlying criminal matter such ambiguities are causing more needless harm, humiliation( Mr. Leiber is fraudulently attaching minutes of the case that relate to competency) to the demurrer. Such cost and such harms will keep increasing until a measure of justice is achieved.

# CAUSES OF ACTION

## COUNT ONE

### (MALICIOUS PROSECUTION)

### (All plaintiffs against all defendants)

335.     Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs .

336.     The criminal proceeding terminated in favor of the plaintiff when all seven charges were dismissed , with prejudice , against the prosecution on March 23rd 2010.

337.     In the course of  a 23 month old malicious prosecution, defendants acted under color of state law to deprive Plaintiffs of certain constitutionally protected rights under the First, Eighth, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

338.     No probable cause existed to institute the restraining orders and prosecution, therefore all acts that violated the rights of the plaintiffs from April of 2008 till March 23rd 2010 were done recklessly, maliciously, and with evil intent by .

339.     These orders would not be requested by any reasonable person but were brought by malice and without probable cause by Notaro and her counsel Allison Sievers on May 1st 2008   with knowledge that there was no basis nor probable cause for such orders. The instigation of the criminal charges was strictly a retaliation for the defamation claim filed by Spitzberg in response to discovery of widespread defamation by Notaro and those in her debt.

340.     After August 13th 2008, Lavely and Singer and Allison Sievers were alerted to the fact that a lawsuit was filed against their client Mathilde Notaro. Gregozek was summoned once again to assure that such a case would be won by their friends at Lavely and Singer.

341.     No  man of ordinary caution and prudence would believe, or entertain an honest or strong suspicion that Spitzberg was guilty.

342.    Defendants had a duty to ascertain whether there was reasonable and probable cause for a prosecution to wit, to have in their possession the restraining order before filing or to have any signed witness statements before the first charge .

343.    Private citizens ,Notaro and Willen and Sievers, recklessly made categorical statements to Detective Gregozek Those statements resulted in Spitzberg being charged with a crime. Upon information and belief all other defendants made statements that led to Spitzberg being charged with a crime.,"

344.    Notaro and Willen instigated or participated in the prosecution by pressing police to apply for a complaint for an improper purpose.

345.    Defendants were actively involved in causing Spitzberg to be prosecuted and or in causing the continuation of the prosecution long after being given evidence of her innocence and the complete lack of credibility of her accusers.

346.    The named defendants did not reasonably believe that Notaro was telling the truth and that Spitzberg had done as alleged. They did not believe and had no probable cause to believe that she had committed any crime and the legal proceedings were used against her solely in bad faith. All named defendants acted primarily for a purpose other than that of bringing Spitzberg to justice;

347.    It will be proven, that those orders and then the criminal charges were brought t to harm the defendant or another improper motive. When Spitzberg complained to the Internal affairs division about Gregozek and then called him a "Keilbasa" on her blog , Gregozek et al became even more malicious and then when the assorted city attorneys read about themselves on the blog the animosity became more personalized.

348.    Spitzberg was harmed; and all the named defendant's conduct was the proximate cause of Spitzberg's harm.

## COUNT TWO: <u>ABUSE OF PROCESS AND CONSPIRACY TO ABUSE PROCESS</u>
### (All plaintiffs Against All Defendants)

349.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs .

350.    The breach of this duty was committed through intentional actions. It was fraudulent, willful and wanto, a malicious.

## <u>COUNT THREE- FALSE IMPRISONMENT</u>

( All plaintiffs Against All Defendants)

351.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs

352.    Spitzberg was wrongfully restrained, detained, and confined by the Sherrifs Department from November 4th till December 4th 2009.

353.    All the defendant's actions were the proximate cause of such actions but it was the Threat Management Unit and Does 1-20 who, upon information and belief, facilitated the wrongful arrest that led to the false imprisonment.

354.    Defendants' above-described conduct intentionally deprived all plaintiffs freedom of movement by menace and unreasonable durress on November 4th 2009 when a group resembling a SWAT team came to wrongfully search and arrest Alisa Spitzberg. Spitzberg was kept in custody with a seven security rating and perceived as a dangerous criminal for no reason throughout.

355.    As a direct and proximate result of said false arrest and false imprisonment, plaintiffs suffered general, and special damages in an amount to be proven at trial.

356.    None of the plaintiffs consented and the harm done was extreme and despicable and warrants punitive as well as general and special damages.

## COUNT FOUR
### Unreasonable Search Search and Seizure (42 U.S.C. 1983)
### (Against all defendants and DOES 1-20)

357.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs.

358.    Plaintiffs claim that Defendants Gregozek and Hoffman conduceted an illegal search and seizure on January 21st, 23rd, 29th 2009 and then again on July 28th August 4th, August 5th and November 4th 2009.

359.    There was no probable cause for such a searches that were "delayed notification" search warrants based on exigent circumstances. These defendants knew there was no probable cause and had no right to invade the plaintiffs privacy . The Defendants searched Plaintiffs person/home/automobile/office, computers, hard drives, notebooks,

mail, legal documents, communications with lawyer Howard Williams  on November 4th 2009's

360.    This search  too was unreasonable in that they long knew there was no probable cause and that Mathilde Notaro was a pathological and malicious liar.

361.    Gregozek and Hoffman et al acted or  purported to act in the performance of their official duties.. Gregozek and Hoffmans unreasonable search was a substantial factor in causing harm to the plaintiffs.

## COUNT FIVE: VIOLATIONS OF 42 U.S.C. 1983: CONSPIRACY
### (Against all defendants)

362.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs

363.    As a result of the concerted unlawful and malicious conspiracy by all Defendants , Spitzberg was deprived of both her liberty without due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983 and 1985. Notaro and all named private entities are liable considering : " Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights. Private parties involved in such a conspiracy may be liable under section 1983." (*United Steelworkers of America v. Phelps Dodge Corp.* (9th Cir. 1989) 865 F.2d 1539, 1540, internal citations omitted.

## COUNT SIX : ARREST

### (Pliantiff Alisa Spitzberg against all Defendants)

364.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs

365.    There was no warrant nor probable cause for the arrest of plaintiff on November 4th 2009. This arrest strictly a product of evil motive and intent and reckless and careful indifference.

366.    The arrest was without reasonable grounds for said Defendants to believe Spitzberg had committed an offense and Defendants knew they were without probable cause to arrest Spitzberg or to search her property

367.    No complaint, information, or indictment was ever sworn against Spitzberg alleging offenses occurring prior to the moment Defendant Lopez handcuffed Spitzberg. No one ever told Spitzberg that she was under arrest and no charges were ever brought related to that arrest or ever.

368.    The arrest involved the reckless and callous indifference to Spitzberg's federally protected rights. This was the act of an arrogant , ruthless and lawless unit who do not think the rules apply to them.

369.    The arrest on November 4th 2009, was motivated solely by evil motive and intent. Namely, to frighten the defendant so that she would not ever hold them accountable for the many crimes they had by now committed against the plaintiffs.

370.    As a result of the concerted unlawful and malicious arrest by Defendants Threat Management Unit, Spitzberg was deprived of both her liberty without due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

**COUNT SEVEN:**

**VIOLATIONS OF 42 U.S.C. 1983: DETENTION AND CONFINEMENT**

(against all defendants)

371.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs .

372.    All acts in statements of facts led to the the willful detention of November 4th 2009 till December 4th 2009 . The detention and confinement was without consent, without authority of law and a product of evil intent. No reasonable belief or probable cause existed for such a "coercive confinement," of Alisa Spitzberg

373.    As a result of their concerted unlawful and malicious detention and confinement of Spitzberg, the Defendants deprived Spitzberg of both her right to liberty and without

due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

374. Since there was no legal basis for the arrest and searches ,the plaintiffs Henya Spitzberg and Lauren Spitzberg should not have  lost their to move freely on November 4th 2009.

375. Since there was no probable cause for the restraining order much less the criminal prosecution , all court dates and losses of freedoms were unwarranted and each and every one is actionable and was done under color of law.

376. After Alisa Spitzberg was wrongfully and falsely arrested on November 4th 2009, evidence will show that Henya and Lauren Spitzberg were confined and detained for a period of time inside and outside their home. Therefore, in the course of this malicious, unreasonable .baseless, and unlawful prosecution all were deprived such rights.

377. The damages to the plaintiffs included great emotional anguish (and a subsequent diagnosis of post traumatic stress disorder) and financial devastation.

### COUNT 8: VIOLATIONS OF 42 U.S.C. 1983: STRIP SEARCH

#### (Alisa Spitzberg Against all defendants)

378. Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs

379. As a result of their concerted unlawful and malicious arrest, detention, and confinement of Spitzberg, Defendants caused Spitzberg to be  subjected to 9 strip searches strip search of her body, a situation where there was no reason to believe that weapons or contraband had been concealed on or in his body, and thus deprived Spitzberg of both her right to liberty without due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

### COUNT 9- DEFAMATION PER SE (PRIVATE FIGURE—MATTER OF PUBLIC CONCERN)

## (against All defendants)

380.     Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs

381.     Alisa Spitzberg claims that she was  harmed by all defendant's non stop defamatory statements outside and inside the courtrooms . These statement that police were called on April 12th 2008 to the Largo comedy show and that on August 29th 2007 she had committed an act of verbal and physical violence against Notaro and that on April 8th 2008 she had written an e-mail to Notaro with alleged threats and that on April 29th 2008 the police had been called and had made statements to Notaro that they didn't take action because "her life hadn't been directly threatened".

382.     These were all lies that Notaro kept repeating long after it was proven that they were lies. The lies Notaro and her "witnesses" were made outside the courtrooms as well as inside.

383.     All defendants knew or had to have known that Spitzberg had not committed any crimes and yet was being charged with a crimes . Spitzberg never did the things that were alleged by any defendant and such allegations and then extreme characterizations( "incompetent to stand trial,") were Notaro and Sievers repeatedly and shameless told many people outside the court that Spitzberg was  "a stalker" a "harraser," and then when the  competency ploy began that at first she was a "danger to herself and others and needs medications," All was alice and with knowledge that these statements were false.

384.     Notaro made defamatory statement against Lauren and Henya Spitzberg too that they too had hit her or cursed at her and then she would begin to mock Henya Spitzberg and lie about what Henya Spitzberg had done or said. The other defendants repeated never made any effort to discern if these were lies and repeated these lies long after it was unreasonable to believe that these lies contained even a grain of truth. Such statements caused them great harm, according to proof. Individuals,other than the named defendants,  will be sued in the state courts as their defamations did not necessarily lead to deprivations, under color of law , The facts of the case are such that this was a malicious prosecution and so these defamations from April 30th 2008- March 23rd 2010, were allowed to exist and even prospered, under color of law. The defamations of the

city attorneys, the district attorneys, and the charlatan doctors, were all under color of law or led to deprivation extremed deprivations.

385. The defendants made many statements to persons other than Plaintiffs. Such statement were widely disseminated outside and inside the courts and much documentary evidence exists as to the defamation to be found on the internet and through witnesses that will prove the nature and breadth of such defamation against all the plaintiffs

386. Those who heard such lies knew or understood that the statements were about the plaintiffs.

387. All those lied to reasonably understood the statement(s) to mean that Spitzberg was a criminal and had committed crimes , was somehow "stalking and harassing" Notaro and many people. The story changed over time and with each person that would retell the slander or liberl. And, then that she was "crazy" enough to be unable to stand trial.

388. All the statements were absolutely false and the defendants failed to use reasonable care to determine the truth or falsity of the statement(s). Catastrophic harm has been endured to the plaintiff's property and business and trade and profession

389. Plaintiffs will prove that defendant's wrongful conduct was a substantial factor in causing the need for lawyers and bond money in the amount of 16,300 dollars. and thousand upon thousands of dollars in lost wages and opportunities as well as court costs, paper, ink, prining supplies, time, energy, emotional anguish have all been caused by the vicious malicious lies begun by Willen and Notaro and then propagated by all named Defendants. Plaintiffs will prove by clear and convincing evidence that these defendnants ] either knew the statements were false or had serious doubts about the truth of the statement(s), and that they acted with malice, oppression, or fraud.

390. **COUNT TEN: DENIAL OF RIGHTS OF FREE SPEECH- FIRST AMENDMENT**

**(All plaintiffs against all Defendants)**

391. Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs.

392. The aforementioned actions described of defendants denied plaintiffs

their rights of privacy and to freely speak, write and publish their

sentiments, to instruct their representatives, petition government for

redress of grievances, to assemble freely, to due process of law and

equal protection of the laws, and to be free from unreasonable searches

and seizures as provided by the California Constitution, article I

sections 1, 2, 3, 7 and 13. As a direct and proximate result of said

denials of plaintiffs's state constitutional rights, plaintiffs suffered

general and special damages in an amount to be proven

at trial.

## COUNT ELEVEN:INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (All plaintiffs Against all Defendants)

393.    Plaintiffs reallege and incorporate herein by reference the allegations set forth
in all preceding paragraphs.

394.    .Defendants' above-described conduct was extreme, unreasonable and outrageous.
By engaging in such conduct, defendants intentionally ignored or recklessly disregarded
the foreseeable risk thatplaintiffs would suffer extreme emotional distress as a result of
defendants' conduct. As a proximate result of said conduct, plaintiffs suffered severe
emotional distress, pain and suffering, fear, anxiety, embarrassment, discomfort and
humiliation, all to their general damage in
an amount to be proven, and incurred special damages in an amount to be
proven.

### COUNT TWELVE: CAL. CIVIL CODE SECTION 52.1

### (All plaintiffs against all Defendants)

395.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs

396.    Defendants' above-described conduct, and all of it,

constitutes interference by threats, intimidation and coercion of rights

secured by the Constitution and laws of the United States and by the

Constitution and laws of the State of California in violation of CivilCode section

397.    The plaintiffs were severely harmed by such actions and tactics and have suffered great damage.

### COUNT THIRTEEN – INTRUSION INTO PRIVATE AFFAIRS
### (against all defendants and   DOES 1-10)

398.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs

399.    Plaintiffs claim that Gregozek, Hoffman, Threat Management unit and all related judges and DOES 1-10 violated their right to privacy.

400.    That Plaintiffs had a reasonable expectation of privacy in their home, computers, library accounts, car, mailbox, e-mail accounts, storage areas when there is absolutely no probable cause to believe that a crime was committed by anyone, considering the facts known to Gregozek , Hoffman and DOES 1-10.

401.    Plaintiff has a right to privacy guaranteed by the First and Fourteenth Amendments to the Constitution of the United States of America.

402.    Gregozek, Hoffman and DOES 1-10 intrusion would be highly offensive to a reasonable person. In fact, such intrusions as in case 8CA10541 are so unwarranted and so egregious that once they should be a matter of public concern. In May of 2008, with no reasonable or probable cause, with no

competent evidence of any crime, with no exigent circumstances and with no imminent danger to any Notaro or any witness or  immediate family, the

Defendant sherein, used their power and that of the State of California

intrude upon and   invade the protected privacy interests of the Plaintiffs

403.    Gregozek, Hoffman and DOES 1-10 intentionally intruded in their home, computers, library accounts, car, mailbox, e-mail accounts, storage areas and who knows what else considering what they felt entitled to do to the plaintiffs in this case.

42 U.S.C. § 1983

404.     The Spitzberg family was harmed . Gregozek, Hoffman and DOES 1-10 conduct beginning on May 7th 2008 when they taped the conversation/interrogation and then the intrusions and molestations they carried out against the Spitzbergs without any understandable reason were a substantial factor in the harm caused these innocent and law abiding people.

405.     Considering the facts of this case and the disposition of the charges ,related to the delayed notification search warrants and the blanket search warrant of the plaintiffs private properties and hard drives etc, the intrusions satisfy, above and beyond, any "highly offensive" standard.

406.     Such instrusions were done with bad faith and evil intent.. All such acts of the Defendants described in this pleading were further aimed at portraying Plaintiff in a false light to the public.

407.     Restatement Second of Torts, section 652B provides: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

408.     As a proximate cause plaintiffs suffered  the humiliation and mortification such a bad faith invasion , under the color of law, would cause.

409.     Such actions have  caused great mental anguish, humiliation, and mortificiation.

## COUNT FOURTEEN

### FRAUD AND CONSPIRACY TO DEFRAUD

#### (Against all defendnants)

410.     Plaintiffs reallege and incorporate herein by reference the allegations set forth in all preceding paragraphs

411.     The allegations made by Notaro and Sievers on the affidavit to obtain the temporary restraining order were fraudulent and the allegations made in the hearing for the permanent order were fraudulent. The allegations made to John Gregozek on April 30th and May 6th by Defendants Notaro and Willen to obtain john Gregozek were fraudulent.  Gregozek and Hoffman knew early on that such allegations were fraudulent but continued to state them as true on their own search warrants and affidavit. There is no way, considering the circumstances, that they believed what they were writing was

true and then they tried and succeeded in defrauding judges

412.   All named defendant knew they were making fraudulent statements and persisted with the fraud. The city attorney then became complicit in the fraud when they agreed to file the single charge but moreso as they then pretended to file four charges and then two charges that no reasonable person would file considering the evidence and the disposition of those charges.

413.   When that failed to induce a plea from Alisa Spitzberg , Martin Boags added four more sham charges on January 21st 2010.. In between, Waxler and Kalpakian would instigate a competency ploy based on no evidence and only initiated for evil intent.

414.    The traverse the warrant would be "buried' so they could continue this charade and when a Pitchess motion was filed that would expose John Gregozek the frauds would come to include a vicious competency ploy where a Dr. Francisco Velarde and a Dr. Kaushal Sharma would be willing to defraud the plaintiff and many others. Upon information and belief, Judge Maria Stratton was complicit in this despicable and outrageous fraud from October 14th –December 4th 2009 and was willing to do anything to assist a malicious prosecution. Judge Jessner and Judge Karla Kerlin, among others was also complicit as evidence by the documents and transcripts in plaintiff's possession.

415.   On Septemenber 14th 2009 evidence shows that Martin Boags knew that Gregozek, Notaro , Sievers, et al and all adverse witnesses had lied about the police's participation , in this case, and yet he would conceal this information from the plaintiffs and Katie Ford would knowingly and reckless attempt to bias another judge with these misrepresentations up unti March 4th 2010 when she would sign a trial brief repeating again these lies that all defendants knew to be lies.

416.   These misrepresentations and concealments were made with intent to deceive plaintiff.

417.   Plaintiffs and their attorneys reasonably believed and relied upon the representation that the police were called on April 12th 2008 and some unethical attorneys  involved would rely on such a desire to convict on behalf of this malicious prosecution as some indication of the prosecutions merits.  Defense counsel was deceived throughout and most simply did not make the reasonable inquiry necessary when faced with so many lies when it was for a misdemeanor case.

42 U.S.C. § 1983

418.     Among other things this expended significant time, effort, resources and attorneys fees to fight such a barrage and to fight the many sham search warrants in this case. They all knew the search warrants were a sham.

419.     On information and belief, all defendants conspired and collaborated in the issuance of the sham search warrants and the proliferation of the false information that they knew to be false.  The intent was to deceive plaintiff and induce a plea bargain and to give the impression of her guilt to bias any interested party; i.e. judges, defense counsel.

420.     There actions individually and in concert, were fraudulent, willful, wanton and malicious. These representations and concealments  caused great harm and damage to the plaintiffs.

## COUNT FIFTEEN

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983

### Deprivation of Property Without Due Process of Law
### (Against all Defendants)

421.     Plaintiffs realleges and incorporate herein by reference the allegations set forth in all preceding paragraphs

422.     Defendant Gregozek, in concert with the other Defendants at the scene, intentionally violated the civil rights of the Plaintiffs by his malicious and wanton disregard for Plaintiffs' property rights.  The invasion of Henya Spitzberg's home and the seizure of her property and that her daughters, without probable cause and by fraud, amounted to the deprivation of property in violation of the Fifth and Fourteenth Amendments.

423.     Henya Spitzberg's modem was seized she could not use the phone from November 6th till she was was able to obtain another one approximately 2 weeks later . The seizure of lawyers e-mails, Lauren Spitzber'gs computers and notebooks, camera and MP3 player,  and the library card of what could have been any of these three women's would shock the conscience of any American citizen and was wholly unwarranted in this case.

424.     Such invasive and illegal searches and seizures of all the plaintiff's properties was based on lies that were known to be lies by all defendants . Such illegal searches and seizures produced nothing but exculpatory evidence. No return to search warrant has

been submitted till this day.

425.    Both unincarcerated plaintiffs were left without any use of a computer due to all computers being seized. There was no probable cause for any of this, as evidenced, by all documents and witnesses and as evidenced by the fact that no charges or evidence was yielded by this search and that the similar allegations and charges that went to trial aquitted by the judge.

426.    The allegations were that on August 22nd 2009 Mathildes lawyer said someone wrote something on a "guestbook," and that on November 4th 2010 this justified a blanket search of All three women's house and property. No probable cause or good faith reason existed or can be inferred by any reasonable person.  This was all just another foiled attempt at inducing plaintiff Alisa Spitzberg to accept the plea bargain and immunize them from the liability that was being incurred.

427.    The conduct of Dunn included him saying, "I read your blog" in response to why such a search and seizure was taking place. The arrest and search and Seizure of Alisa Spitzberg and the plaintiff's property were unnecessary, illegal, and unwarranted.

428.    Defendant Gregozek and the other Defendants, either with the specific intent to violate the Plaintiffs' civil rights or with a reckless disregard of the probability of causing that violation, invading the sanctuary of Henya Spitzberg's home, lawlessly seized her beloved daughter, lawlessly seized and then searched their properties without just provocation in front of their owners, the Plaintiffs herein.

429.    The manner in which the arrest, search and seizure of November 4th 2009 occurred was so extreme and outrageous that it went beyond the bounds of decency.  It would be considered atrocious and utterly intolerable in a civilized community.

430.    The invasion, false arrest, fraudulent search and seizure were done in such merciless fashion caused severe emotional distress to the Plaintiffs, and Plaintiffs are entitled to compensatory and punitive damages.

431.    Defendant's actions, individually and jointly, were malicious and evidenced a callouos and reckless disregard for, and deliberate indifference to, plaintiffs constitutional rights

432.    As a direct and foreseeable consequence of defendant's conduct, plaintiffs suffered injuries such as humiliation, emotional anguish,, and other harms, for which Defendants are liable and Plaintiffs seek damages

**COUNT SIXTEEN—Medical Malpractice-Violation of Eight amendment(prohibits cruel and unusual punishment)**

( **Against Dr. Francisco Velarde, Dr. Kaushal Sharma and Does 1-30-all defendants involved with the competency ploy and the illegal jailing of 31 days.** )

433.    Plaintiffs realleges and incorporate herein by reference the allegations set forth in all preceding paragraphs

434.    Alisa Spitzberg was severely damaged by being jailed and denied her medications from November 4th 2009 till December 4th 2009)

435.    The seeds of that part of the conspiracy began either on August 12th 2009 when Spitzberg filed a Pitchess motion that would expose the "lead detective's" records. To retaliate and to attempt to avoid a trial that the prosecution could not win if they didn't employ illegal and extreme tactics a competency ploy began that day.

436.    On October 14th 2009, Dr. Franciso Velarde in concert with a malicious prosecution and working exclusively on Judge Maria Stratton's command. Judge Maria Stratton behaved in ways that do not make sense  and it is alleged that she should be unbenched for her behavior in this case.

437.    Dr's Velarde and Sharma  failed in in their duty to protect the defendant, to meet the standard of conduct, and this failure was a proximate result of the illegal jailing of Spitzberg for 31 days. Dr. Velarde knew that Spitzberg was competent to stand trial by any standards and he was a willing conspirator in what had become a barbarically malicious prosecution.

438.    On November 9th 2009, Dr. Kaushal Sharma would fraudulently and without callous disregard  write a report to please whomever was ordering such a report.  Upon information and belief, Judge Maria Stratton, without jurisdiction and behaving as an adversary of the highest order, commanded  Velarde to write  this report . Evidence will show no reports were written by either doctor that even attempt to show that they gave Spitzberg the requisite tests. The fact that the evidence will show and a witness will show that Francisco Velarde's report was actually hidden when it was discovered by the plaintiffs that he wasn't certified.

439.    The fraud and medical malpractice was discovered by Spitzberg on January 15th

2010 when James Silverstien sent Spitzberg the reports and she and her family saw that these two doctors not only were lying and not even attempting to show that they had practiced any duty of care but they, for no understandable reason, wanted to have Alisa Spitzberg forcefully medicated. Considering the facts and Alisa Spitzberg's intellect and mental health history this despicable and outrageous.

440.     The fact that Sharma will say that Spitzberg is not getting any medication in jail proves that not only were they denying Spitzberg medication in jail but that this doctor was fraudulently attempting to have Spitzberg committed to a mental institution and yet thought it ok that she was receiving no medication in jail. What insane individual is not medicated in jail? Spitzberg repeatedly requested her antidepressants and anti anxiety medication in jail and was repeatedly denied. Dr. Velarde worked in the jail and upon information and belief the deprivation of such important medicine was a part of the plot.

441.     The plaintiffs all were  harmed and damaged, catastrophically, by this dark ages experience

442.      Dr's Velarde and Sharma's medical malpractice was a substantial factor in causing the jailing and abuse of Alisa Spitzberg and the post Traumatic stress disorder suffered by the plaintiffs.

443.     Considering the facts of the criminal case, any unbiased trier of fact will see that these two doctors caused great damage when they breached the standard of care and did things that are considered , "chilling," by all those who see or hear of it.

**COUNT SEVENTEEN- TRESPASS**

**(Henya Spitzberg against the THREAT MANAGEMENT UNIT and Does 1-20)**

444.     Plaintiffs realleges and incorporate herein by reference the allegations set forth in all preceding paragraphs

445.     Henya Spitzberg  claims that threat management unit and Does 1-20  trespassed on her property.

446.     Henya Spitzberg rented the property at #203 Fountain ave, and owned the car that was illegally searched and invaded. She had possession of all the searched areas on November 4th 2009.

447.     Without probable cause to so, the Threat management unit , in SWAT gear, and

DOES 1-10 intentionally, recklessly, and negligently invaded Henya Spitzberg's property in all the search warrants but specifically for November 4th 2009.

448.     Henya Spitzberg  did not give permission for the entry, knowingly.

449.     Henya Spitzberg is a law abiding citizen who is also a 71 year old survivor of the Holocaust . The neighbors were all informed of such an event and Henya Spitzberg was shamed,traumatized, and very injured by such frightening and illegal actions. She lives in fear as would be deduced by the facts of the case and the events of November 4th 2009.

The Threat Management unit's conduct in illegally entering and searching her property caused great harm to Henya Spitzberg

## COUNT EIGHTEENTH

**Violation of Prisoner's federal Civil Rights- Eighth amendment – Medical Care (Alisa Spitzberg Against Threat Management Unit, Dr. Francsico Velarde and Dr. Khaushal Sharma)**

450.     Plaintiffs realleges and incorporate herein by reference the allegations set forth in all preceding paragraphs

451.     plaintiff Alisa Spitzbeg has depression and anxiety and has been prescribed medication for this, for over ten years.

452.     As a part of the conspiracy to break her for a plea , her medications were denied her while she was coercively confined. Taking her depression and anxiety medication in general and under such conditions is a serious medical need.

453.     The defendants acted with evil intent or deliberate indifference in denying her these medications while she was incarcerated for 31 days

454.     Dr. Francisco Velarde and Dr. Kaushal Sharma with evil intent pretended to diagnose Alisa Spitzberg without any testing or any questions that would allow them any diagnosis. They will write that Spitzberg needs to be "forcefully medicated" and yet they will make sure she is not given her medicatins for depression and anxiety. Such evil acts in concert with the co conspirators to "break" Alisa Spitzberg, caused extreme emotional anguish and she request punitive damages to be decided after trial.

## COUNT NINETEEN

**VIOLATION OF AND CONSPIRACY TO VIOLATE FOURTEENTH AMENDEMENT RIGHTS UNDER 42 U.S.C 1983- MALICIOUS INVESTIGATION**

**(Against All defendants)**

455.    Plaintiffs realleges and incorporate herein by reference the allegations set forth in all preceding paragraphs

456.    As alleged herein, the law enforcement defendants were willing participants in a joint course of conduct, together with the Threat Management Unit, Angela Lucie, who were acting under color of law to instigate, facilitate, and prolong a malicious, bad faith criminal investigation of plaintiffs.  This malicious investigation was highly outrageous, undertaken in bad faith, caused by malicious motives, and involved conduct that shocks the conscience. It violated plaintiffs' due process rights.

457.    Among defendants' malicious actions the shock the conscience, the defendants knowingly disseminated false information, retaliated against plaintiffs for the exercise of constitutional rights; conspired with other defendants to violate fourth and other constitutional rights; suppressed exculpatory evidence; manufactured false evidence ; violated canons of legal ethics, and vigorously pursued a criminal investigation that they knew to be wholly baseless and unwarranted.

458.    The non law enforcement defendants willfully participated in this joint course of conduct by, among other things willfully providing false information to Gregozek or any investigating entity, including Martin Boags who investigated this case in September of 09. They all made and ratified false and imflammatory statements maligning and defaming plaintiffs. There was an agreement and meeting of the minds among Notaro, Sievers, Willen et al and the police and prosecutors in this case to engages in a course of conduct that violated plaintiffs substantive due process rights.

459.    As a direct and foreseeable consequence of defendan'ts conduct, plaintiffs suffered injuries including violaton of rights, reputational injury and public humiliation and obloquy, severe emotional distress, economic damages, and other harms

460.    Defendnants actions , individually and jointly were malicious and show a callous and reckless disregard for and deliberate indifference to plaintiffs constitutional rights.

## COUNT TWENTY

## OBSTRUCTION OF AND CONSPIRACY TO OBSTRUCT PUBLIC JUSTICE

461.    Plaintiffs realleges and incorporate herein by reference the allegations set forth in all preceding paragraphs

42 U.S.C. § 1983

462.     The defendants, acting individually and in concert, engaged in acts that attempted to and did prevent, obstruct, impede, and hinder public and legal justice in the state of California.

463.     Defendants, acting individually and in concert engaged in this obstruction by inititiating, pursuing, and prolonging in bad faith a malicious criminal investigation and prosecution of Alisa Spitzberg. They made false statements throughout that injured the reputations of all plaintiffs. They abuse the judicial process and invade the bodily privacy of Alisa Spitzberg(9 strip searches in total over 31 days of coercive confinement) without constitutional justification.  They suppressed exculpatory evidence and made false statmenents that subjected them to public humiliation, ostracism. Plaintiffs  were subject and are still subject to public harassment and the interference with criminal and legal proceeding against them and other actions.

464.     As a direct and foreseeable consequence of defendant's actions, plaintiffs suffered severe injury to their reputations, invasion of seclusion and constitutionally protected privacy, severe emotional distress, loss of work and career prospects, los professional opportunities, economic damages and other harms, as well as enhancement of injuries from other sources such as civil suits against James Silverstien, Peter Knecht, and the law firm of Lieber, Williams and Labin.

465.     Defendants actions in obstructing justice were fraudulent, willful and wanton, and malicious.

## PRAYER FOR RELIEF

Wherefore, plaintiffs pray for relief as follows:

a. An award of compensatory and general damages against defendants and each of them, in an amount to be determined according to proof;

b. damages, in an amount to be established at trial, as compensation for injuries to

reputation, emotional suffering, past and future economic losses, invasion of privacy, constitutional deprivations, loss of jobs and future career prospects, legal and other expenses and other injuries proximately caused and enhanced by defendant's wrongful conduct;An award of exemplary and punitive damages against all
defendants sued in their individual capacities in an amount to be proven
at trial;

c. damages, in an amount to be established at trial, to punish defendants for fraudulent, willful and wanton, and malicious conduct; to punish defendants for outrageous conduct pursued with actual malice that recklessly and callously disregarded plaintiff's physical and emotional well being and constitutional rights;to discourage defendants from engaging in similar conduct in the future ; and to deter others similarly situation from engaging in similar wrongful conduct.An award of statutory damages and penalties pursuant to
Cal. Civil Code §52(b);

d. An award of plaintiffs' fees and costs, expenses and reasonable
attorney's fees pursuant to 42 U.S.C. §1988, Cal. Civil Code §§52(b) and
52.1(h), and Cal. Code of Civil Procedure §1021.5;
6. All costs incurred pursuing the civil cases and in defending against the criminal action
8CA10541
e. Declaratory relief -   To  declare   the restraining order a void judgement  as it was  a
result of intrinsic and extrinsic fraud.
f. Declaratory relief that Alisa Spitzberg was factually innocent of the allegations made in the restraining order hearing and of the criminal charges against her brought by malice and fraud by Defendants.
g. Injunction- To remove  the appellate decision , that was based on fraud, from  internet sites and from Mathilde Notaro's Wikepedia page and if not possible --to put a disclaimer in that states the truth, in the interests of justice.
and such other and further relief as the Court
may deem just and proper.

Dated: 11/29/10

By: _____
       Signing Attorney

Attorneys for Defendants

Laura Spitzley

Alisa Spitzberg
7513 Fountain Ave. # 203
Los Angeles, CA 90046
323-883-0154

**FOR OFFICE USE ONLY**

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| Alisa Spitzberg, Henya Spitzberg, and Lauren Spitzberg, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV10-09169-JHN(PLA) |
| v. | |
| Mathilde Notaro, (See Attachment) | **SUMMONS** |
| DEFENDANT(S). | |

TO:   DEFENDANT(S): _____

**FOR OFFICE USE ONLY**

A lawsuit has been filed against you.

    Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Alisa Spitzberg_____, whose address is _7513 Fountain Ave. # 203, Los Angeles, CA 90046_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____DEC − 7 2010_____

By: ____ANDRES PEDRO_____
       Deputy Clerk

*(Seal of the Court)*   1202

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**FOR OFFICE USE ONLY**

CV-01A (12/07)                                    **SUMMONS**

1 | Alisa Spitzberg, Henya Spitzberg, Lauren Spitzberg
  | 7513 Fountain Ave. #203
2 | Los Angeles, CA
  | 323-883-0154
3 | Email: AlisaSpitz@aol.com

4 | In Propria Persona
5 |

6 |

7 | **UNITED STATES DISTRICT COURT**

8 | **CENTRAL DISCRICT OF CALIFORNIA**

9 |

10 | Alisa Spitzberg, Henya Spitzberg, and Lauren    | Case No.
   | Spitzberg,
11 |                                                  | **CIVIL RIGHTS COMPLAINT**
   |          Plaintiffs                              | **PURSUANT TO**
12 |                                                  | **42 U.S.C. § 1983**
   | vs.
13 |
14 | ,                                                | **DEMAND FOR A JURY TRIAL**
15 |          Mathilde Notaro, Stephanie Willen, Michael
   | Griffee, Mark Flanagan, Reeta Piazza, Allison
16 | Sievers, Lavely and Singer LLP, The Threat
   | Management Unit of the LAPD, John Gregozek,
17 | James Hoffman, Martha Defoe, ,Detective Lopez,
   | Detective Smith,  Jeffrey Dunn, Sergeant Angela
18 | Lucie, Deputy city attorney Phyliss Henderson,
   | ,Deputy City attorney Kelly Boyer, Deputy City
19 | attorney Jennifer Waxler, Deputy City attorney
   | Felise Kalpakian, Deputy City attorney Bernie
20 | Brown, Deputy city attorney Martin Boags, Deputy
   | city attorney Katie Ford,  District attorneys office,
21 | Depute District attorney Richard Vagnozzi, Deputy
   | District attorney Jessica Goulden,  Dr. Francisco
22 | Velarde, Dr. Kaushal Sharma,, and DOES 1-100.

23 |          Defendants

24 |

25 |                            <u>**VENUE**</u>

26 | 1.  The Central District of California is an appropriate venue under 28 U.S.C. section 1391

27 |      (b)(2) because it is where the events giving rise to this claim occurred and all the acts/or

28 |

Case No.

42 U.S.C. § 1983

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Alisa Spitzberg, Henya Spitzberg, and Lauren Spitzberg, | Mathilde Notaro, Stephanie Willen, Michael Griffee, Mark Flanagan, Largo, Reeta Piazza, ,Allison Sievers, Lavely and Singer LLP, The Threat Management Unit of the LAPD, John Gregozek, James Hoffman, Martha Defoe, Judge Gerald |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Alisa Spitzberg, Henya Spitzberg, Lauren Spitzberg 7513 Fountain Ave. #203 Los Angeles, CA | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No     ☐ **MONEY DEMANDED IN COMPLAINT: $** To be determined by facts

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 USC § 1983

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | | ☐ 510 Motions to | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product | ☐ 370 Other Fraud | Vacate Sentence | ☐ 720 Labor/Mgmt. |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | Liability | ☐ 371 Truth in Lending | Habeas Corpus | Relations |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | Disclosure Act |
| ☐ 470 Racketeer Influenced and Corrupt | Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted | Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. |
| ☐ 490 Cable/Sat TV | Student Loan (Excl. | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 | FORFEITURE / | Security Act |
| ☐ 810 Selective Service | Veterans) | ☐ 355 Motor Vehicle Product Liability | USC 157 | PENALTY | PROPERTY RIGHTS |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of | ☐ 360 Other Personal | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 USC 3410 | Veteran's Benefits | Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related | ☐ 840 Trademark |
| ☐ 891 Agricultural Act | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | Seizure of Property 21 USC | SOCIAL SECURITY |
| ☐ 892 Economic Stabilization Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product | ☐ 444 Welfare | 881 | ☐ 861 HIA (1395ff) |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | Liability | ☐ 445 American with Disabilities - | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 894 Energy Allocation Act | REAL PROPERTY | IMMIGRATION | Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization | ☐ 446 American with Disabilities - | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 900 Appeal of Fee Determi-nation Under Equal | ☐ 220 Foreclosure | Application | Other | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | ☑ 440 Other Civil Rights | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:  **CV10-09169-JHN  (PLA)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _Henya Springer_      Date  11/23/10

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |